[L.A. No. 31076. Oct. 22, 1979.]

In re ERIC J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ERIC J., Defendant and Appellant.

524

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Handy Horiye for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom, Alan S. Moth and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CLARK, J.—Eric J., a minor, appeals from an order continuing his juvenile court wardship and committing him to the Youth Authority (Welf. & Inst. Code, §§ 602, 731) after findings he committed burglary

(Pen. Code, § 459) and was in contempt of court for violating conditions of an earlier order granting probation (Pen. Code, § 166, subd. 4). The maximum term for which he might be confined was determined to be three and one-half years—three years for the burglary and six months for the misdemeanor contempt. The commitment order must be modified to recite that appellant's maximum term is three years, two months, and that he is to receive forty-six days credit for time in custody prior to commitment. As modified, the judgment will be affirmed.

## Facts

A month after 10 pairs of roller skates were taken in a burglary of the Sweetwater Roller Rink, Midge Rhoda, a professional skating instructor, informed the owner that appellant was at the Palisades Gardens Skating Rink attempting to sell roller skates which might be the ones stolen. In response to a call from the owner, Officer Merrell Davis went to the Sweetwater rink and was advised by the manager, Buddy Morris, of appellant's identity and his employment at the rink. Officer Davis had a copy of the burglary report.

The uniformed officer drove Morris to the Palisades Gardens where they met Rhoda. She suggested they talk to appellant in her office and summoned him. During questioning by Morris for 45 minutes to an hour, appellant confessed to the burglary, implicated his brother as his accomplice, and stated that he had sold some of the skates to individuals still at the Palisades Gardens, and that the remaining skates were at his house. On two occasions during the conversation appellant left the office and returned with individuals to whom he had sold skates. Officer Davis then drove Morris and appellant to the latter's house where he remained outside while Morris and appellant went in and retrieved the other skates.

Both Morris and Officer Davis testified that Morris questioned appellant on his own initiative, that the officer did not suggest or arrange he do so, and that the officer, while present during the conversation between Morris and appellant, did not participate in it. Appellant testified to the contrary, claiming that Officer Davis joined Morris in questioning him.

### Admissibility of the Confession

█ Appellant contends his confession and resulting evidence should have been suppressed because he was not advised prior to being ques-

tioned of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

The procedural safeguards set forth in *Miranda* "come into play only where 'custodial interrogation' is involved, and by 'custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" (*People* v. *Fioritto* (1968) 68 Cal.2d 714, 718 [68 Cal.Rptr. 817, 441 P.2d 625].) "A private citizen is not required to advise another individual of his rights before questioning him. Absent evidence of complicity on the part of law enforcement officials, the admissions or statements of a defendant to a private citizen infringe no constitutional guarantees." (*People* v. *Mangiefico* (1972) 25 Cal.App.3d 1041, 1049 [102 Cal.Rptr. 449], citations omitted; see *People* v. *Price* (1965) 63 Cal.2d 370, 379 [46 Cal.Rptr. 775, 406 P.2d 55].) The question thus presented is whether Officer Davis participated in the questioning of appellant either directly or through the agency of Mr. Morris.

"[T]he trial court's ruling on a *Miranda* issue may not be set aside by us unless it is '*palpably erroneous.*' A ruling palpably erroneous is one lacking support of substantial evidence. (*People* v. *Duren* (1973) 9 Cal.3d 218, 238 [107 Cal.Rptr. 157, 507 P.2d 1365].) And of course '[w]hen two or more inferences can reasonably be deduced from the facts,' either deduction will be supported by substantial evidence, and 'a reviewing court is without power to substitute its deductions for those of the trial court.' (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)" (*People* v. *Superior Court (Tunch)* (1978) 80 Cal. App.3d 665, 670 [145 Cal.Rptr. 795].)

The trial court expressly found Officer Davis did not directly participate in questioning appellant, and, in ruling a *Miranda* warning was unnecessary, impliedly found lack of complicity between Davis and Morris. As the findings were supported by substantial evidence, we must uphold them.

Appellant's reliance on *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97 [73 Cal.Rptr. 575, 447 P.2d 967] is misplaced. There we held that in appropriate circumstances a private citizen may be deemed to act as an agent of the police when the latter merely "stand idly by," i.e., when they knowingly permit the citizen to conduct an illegal search for their benefit and make no effort to protect the rights of the person being

searched. (*Id.,* at pp. 102-103.) However, a "prerequisite to invoking the *Stapleton-Moody* rule is, manifestly, that the search permitted by the police be illegal." (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 913 [103 Cal.Rptr. 897, 500 P.2d 1097].) In *Stapleton,* the private citizen searched the locked trunk of the defendant's car, committing both a misdemeanor and a civil trespass. (70 Cal.2d at p. 103.) *Stapleton* was held inapposite in *McKinnon* where the private party, a common carrier, had legitimate grounds for carrying out the challenged search. (7 Cal.3d at p. 913.) For the same reason it is inapposite here. It was perfectly appropriate of Mr. Morris to question appellant in order to secure the return of the stolen skates.

### Equal Protection

 Relying on *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], appellant contends Welfare and Institutions Code section 726 denies him equal protection of the laws by providing that the maximum term of confinement for a juvenile is the longest term imposable upon an adult for the same offense, without the necessity of finding circumstances in aggravation of the crime justifying imposition of the upper term as is required in adult criminal procedure by Penal Code section 1170, subdivision (b).

Section 726, subdivision (c), of the Welfare and Institutions Code provides in relevant part: "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

Section 1170, subdivision (b), of the Penal Code provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the

crime. At least four days prior to the time set for imposition of judgment either party may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. . . . "

Appellant was found to have committed burglary. (Pen. Code, § 459.) Because the court failed to find the degree of the offense, it is deemed to be of the second degree. (Pen. Code, § 1157.) Second degree burglary is punishable "by imprisonment in the county jail not exceeding one year or in the state prison." (Pen. Code, § 461, subd. 2.) Where it is not otherwise specified, the term for an offense punishable by imprisonment in a state prison is "16 months, or two or three years." (Pen. Code, § 18.) Pursuant to Welfare and Institutions Code section 726, subdivision (c), the maximum term for which appellant might be confined for the burglary was determined to be three years. He contends that, in the absence of any finding of aggravation, it is a denial of equal protection of the law not to set the maximum at two years.

In *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], this court held that section 1770 of the Welfare and Institutions Code violated the equal protection clauses of the California and United States Constitutions insofar as it permitted misdemeanants between the ages of 16 and 21 to be committed to the Youth Authority (Welf. & Inst. Code, § 1731.5) for a term potentially longer than the maximum jail term which might have been imposed for the same offense if committed by a person over the age of 21 years. We emphasized that youthful misdemeanants committed pursuant to section 1731.5 "have been prosecuted *as adults,* adjudged by the same standards which apply to *any competent adult,* and convicted *as adults in adult courts."* (17 Cal.3d at pp. 242-243, original italics.) "We are not confronted," we stressed, "by a situation in which a juvenile adjudged *under the Juvenile Court Law as a juvenile* contends that his term of involuntary confinement may exceed that which might have been imposed on an adult or juvenile who committed the identical unlawful act and was thereafter convicted *in the criminal courts.* Since

that situation is not before us, we reserve consideration of the issue should it arise in some future case and we express no opinion on the merits of such a contention." (*Id.,* at p. 243, fn. 11, original italics.)

The situation not before us in *Olivas* is presented here. Appellant was adjudged under Juvenile Court Law as a juvenile. Pursuant to Welfare and Institutions Code section 726, subdivision (c), the maximum term for which he might be confined for the burglary was automatically set at three years. An adult or juvenile convicted in the criminal courts of committing the identical unlawful act could not, without a finding of aggravating circumstances, be imprisoned more than two years.

Despite this disparity, appellant has not been denied equal protection of the laws. ■ The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. (See, e.g., *In re Roger S.* (1977) 19 Cal.3d 921, 934 [141 Cal.Rptr. 298, 569 P.2d 1286].)[1] Adults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the Youth Authority are not "similarly situated."

For purposes of this discussion, the most significant difference between minors and adults is that "[t]he liberty interest of a minor is qualitatively different than that of an adult, being subject both to reasonable regulation by the state to an extent not permissible with adults (*Planned Parenthood of Cent. Mo.* v. *Danforth* [1976] 428 U.S. 52, 74 [49 L.Ed.2d 788, 808, 96 S.Ct. 2831, 2843]; *Ginsberg* v. *New York* [1968] 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274]; *Prince* v. *Massachusetts* [1944] 321 U.S. 158, 170 [88 L.Ed. 645, 654-655, 64 S.Ct. 438]), and to an even greater extent to the control of the minor's parents unless 'it appears that the parental decisions will jeopardize the health or safety of the child or have a potential for significant social burdens.' (*Wisconsin* v. *Yoder* [1972] 406 U.S. 205, 234 [32 L.Ed.2d 15, 35, 92 S.Ct. 1526].)" (*In re Roger S., supra,* 19 Cal.3d at p. 934.) When the minor must be removed from the custody of his parents for his own welfare or for the safety and protection of the public (Welf. & Inst. Code, § 202), the state assuming the parents' role, the state also assumes the parents' authority to limit the minor's freedom of action.

---

[1]As Justice Frankfurter once wrote, "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." (*Tigner* v. *Texas* (1940) 310 U.S. 141, 147 [84 L.Ed. 1124, 1128, 60 S.Ct. 879, 130 A.L.R. 1321].)

■ "'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'" (*In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201], quoting *Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) The state does not have the same purpose in sentencing adults to prison that it has in committing minors to the Youth Authority. Adults convicted in the criminal courts are sentenced to prison as punishment (Pen. Code, § 1170, subd. (a)(1) while minors adjudged wards of the juvenile courts are committed to the Youth Authority for the purposes of treatment and rehabilitation (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65]).

This distinction has been significantly sharpened recently. Under the Indeterminate Sentence Law, which was the system under review in *Olivas,* the purposes of imprisonment were deterrence, isolation and rehabilitation. (See, e.g., *In re Estrada* (1965) 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948].) Not the least of these was rehabilitation. "It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime." (*In re Lee* (1918) 177 Cal. 690, 692 [171 P. 958]; see *In re Foss* (1974) 10 Cal.3d 910, 923 [112 Cal.Rptr. 649, 519 P.2d 1073].)

The enactment of the Uniform Determinate Sentencing Act marked a significant change in the penal philosophy of this state regarding adult offenders. "The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances. The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion." (Pen. Code, § 1170, subd. (a)(1).)

There has been no like revolution in society's attitude toward juvenile offenders. ■ It is still true that "[j]uvenile commitment proceedings

are designed for the purposes of rehabilitation and treatment, not punishment." (*In re Aline D., supra,* 14 Cal.3d 557, 567.) Therefore, Juvenile Court Law continues to provide for indeterminate terms, with provision for parole as soon as appropriate. (Welf. & Inst. Code, § 1176.)

In *Olivas* this court objected that "[t]here has been no showing made that youthful offenders *necessarily* require longer periods of confinement for rehabilitative purposes than older adults." (17 Cal.3d at p. 256.) No such objection is appropriate here since under the Determinate Sentencing Act rehabilitation is no longer the standard for term fixing.

It is significant, however, that in *Olivas* we approved of a federal law having essentially the same features challenged here. "In the context of juveniles adjudged as delinquents and committed under the Federal Youth Corrections Act the United States Congress has recently revised custody limitations so that they are now within constitutional bounds. (18 U.S.C. § 5037(b).) The new provisions now accord juveniles confined as delinquents (as opposed to misdemeanants) the constitutional protection we find required in the instant case." (17 Cal.3d at pp. 255-256, fn. omitted.)

The statute mentioned provides in pertinent part: "Probation, commitment...shall not extend beyond the juvenile's twenty-first birthday or the maximum term which could have been imposed on an adult convicted of the same offense, whichever is sooner...." (18 U.S.C. § 5037(b).) In the federal system, the trial judge is informed of the maximum sentence for each crime from the federal code. The judge, in his sound discretion, sets the determinate sentence at any point up to the maximum. (Fed. Rules Crim. Proc., rule 32(a); *United States* v. *Buck* (9th Cir. 1977) 548 F.2d 871, 877.) Thus, the judge in each criminal case carries on what is essentially a mitigation/aggravation hearing. No such discretion exists in a youth commitment made pursuant to 18 United States Code section 5037. The juvenile is simply sent to the rehabilitative authority to be treated as the authority in its professional judgment deems best. In *Olivas* our court was aware of this facet of the federal juvenile system. The court nonetheless found the system to have avoided the defects of the old California juvenile sentencing scheme. *Olivas* has thus sanctioned the system now defined in California by Welfare and Institutions Code sections 726 and 731, including provision for commitment up to the maximum adult term without review by the trial court.

In conclusion, because minors and adults are not "similarly situated" with respect to their interest in liberty, and because minors adjudged wards of the juvenile courts and committed to the Youth Authority and adults convicted in the criminal courts and sentenced to prison are not confined for the same purposes. Welfare and Institutions Code section 726 does not deny minors equal protection of the laws.

### Entitlement to Precommitment Credit

Relying on section 2900.5 of the Penal Code and section 726 of the Welfare and Institutions Code, appellant contends he is entitled to 46 days credit for time in custody in a juvenile detention facility prior to commitment to the Youth Authority. The record reflects appellant was detained in juvenile hall for 19 days pending adjudication of the contempt charge, and then, having been released to the custody of his mother in the interim, was detained another 27 days pending resolution of the burglary charge.

We first consider whether appellant is entitled to precommitment credit under Penal Code section 2900.5.

In *People* v. *Sandoval* (1977) 70 Cal.App.3d 73 [138 Cal.Rptr. 609], the defendant, under the age of 21 at the time of the offense, pleaded guilty to robbery and was placed on probation on condition he serve one year in county jail. After release on probation, the defendant was arrested on another robbery charge and, being found in violation of probation, was "sentenced" to the Youth Authority. The Court of Appeal held that section 2900.5 entitled the defendant to credit for the year served in county jail as a condition of probation and for 90 days spent in custody awaiting revocation proceedings. Section 2900.5 then provided in relevant part: "(a) *In all felony and misdemeanor convictions,* either by plea or by verdict, when the defendant has been in custody, including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, or similar institution, *all days of custody* of the defendant, *including days served as a condition of probation* in compliance with a court order, *shall be credited upon his sentence,...*" (Italics added.) Explaining its conclusion that the statute applied to "sentences of felons committed to the CYA," the Court of Appeal noted: "By its express terms, the statute applies to *all* felony and misdemeanor convictions and provides for credit for the time a defendant has spent in custody as a condition of probation and awaiting proceedings 'related to the same conduct.'" (70 Cal.App.3d at p. 88.) Alternatively, the Court of Appeal

held that "a statutory construction excluding youthful felons committed to the CYA from the benefits of section 2900.5 would constitute a denial of equal protection under the rationale of" *Olivas.* (*Id.,* at p. 89.)

In *In re Leonard R.* (1977) 76 Cal.App.3d 100 [142 Cal.Rptr. 632], the appellant relied on *Sandoval* and *Olivas* in seeking credit against a Youth Authority commitment for time spent in juvenile hall pending the juvenile court proceedings culminating in that commitment. Distinguishing *Sandoval* and *Olivas* on the ground they "involved proceedings in adult courts," the Court of Appeal held that the appellant was not entitled to the credit under section 2900.5, and that excluding him from the benefits of that section did not deny him equal protection of the law. "Penal Code section 2900.5 by its very terms is not applicable to juvenile commitments. The statute refers to 'felony and misdemeanor *convictions*' and provides for precommitment custody time to be credited only against the defendant's 'sentence.' (Italics added.) A declaration of wardship is not a 'conviction' and a dispositional order of the juvenile court is not a 'sentence.'" (76 Cal.App.3d at pp. 103-104.) Regarding the equal protection issue, the court held: "The distinction between juveniles and adults which permits different legislative treatment in terms of confinement and disposition is to be found in the fundamental and conceptual difference between criminal prosecution and juvenile proceedings. Such a distinction is not arbitrary and clearly bears a substantial relation to a legitimate legislative objective." (76 Cal.App.3d at pp. 104-105.)

The Court of Appeal in the present case did not hold that appellant was entitled to credit under the terms of section 2900.5, but rather, relying on *Olivas,* held it would be a denial of equal protection of the law to deny him credit. In *In re Maurice S.* (1979) 90 Cal.App.3d 190 [153 Cal.Rptr. 317], mod. 91 Cal.App.3d 123b, the Court of Appeal reached the same conclusion on the equal protection issue.

Appellant does not so contend, but the petitioner in *In re Garcia* (2 Crim. 34007, petn. for habeas corpus den. 8, Jan. 1979, hg. den. by Supreme Ct. 11, Jan. 1979) argued that the Legislature responded to *Leonard R.* by amending section 2900.5 to extend its benefits to juveniles. In 1978, the section was amended by including time spent in a "juvenile detention facility" as time that must be credited. In support of his interpretation of the significance of the amendment, the petitioner in *Garcia* attached as an exhibit to the petition for habeas corpus in the Court of Appeal a letter from the author of both the original statute and the amendment, State Senator Alan Sieroty. Senator Sieroty stated

in pertinent part: "The phrase 'juvenile detention facility' has been added to the list of places of confinement in Penal Code Section 2900.5 to relieve the ambiguity that was the basis of [*Leonard R.*].... Our amendment... is designed to reverse this court interpretation and to insure that a minor may not be placed in jeopardy of serving more time than his adult counterpart."

However, as Senator Sieroty concedes: "It is possible that the amendment to Section 2900.5 could be construed to not affect the *In re Leonard R.* holding because a dispositional order of the juvenile court is not a 'sentence.' I regret that this ambiguity in our statute still exists." The reference is to the statement in *Leonard R.* explaining the court's conclusion that section 2900.5 does not apply to juveniles: "A declaration of wardship is not a 'conviction' and a dispositional order of the juvenile court is not a 'sentence.'" (76 Cal.App.3d at p. 104.) As neither of the terms found crucial by the court in *Leonard R.* was changed, it is not clear that the 1978 amendment to section 2900.5 was intended as repudiation of that decision. The point of the amendment may have simply been to insure that a minor who is ultimately tried as an adult is given credit for all time in custody prior to sentence, whether that time was spent in a jail or in a juvenile detention facility.

In *In re Harm R.* (1979) 88 Cal.App.3d 438 [152 Cal.Rptr. 167], the Court of Appeal felt it unnecessary to "become embroiled in any controversy between *Leonard R.* and *Eric J.* vis-à-vis the application of Penal Code section 2900.5 to the juvenile court." Instead, the court analyzed the question of a juvenile's entitlement to precommitment credit as calling for interpretation of Welfare and Institutions Code section 726.[2] "Section 726 provides that when a minor is removed from the custody of his parents as the result of an order of wardship made pursuant to section 602 (the instant case), a minor may not be held in a physical confinement for longer than the underlying crime and physical confinement expressly includes juvenile hall. Thus, the 145 days in juve-

---

[2]As previously stated, section 726, subdivision (c) of the Welfare and Institutions Code provides in relevant part: "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

nile hall must be credited against the total time the minor may be held within the jurisdiction of the juvenile court." (88 Cal.App.3d at p. 445.)

In support of *Harm R.'s* interpretation of section 726, subdivision (c), it may be noted the statute expressly states the minor's maximum term is *not* to be reduced by "time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code," suggesting that precommitment credit would also have been expressly excluded, had that been the Legislature's intent.

■ Although the question of legislative intent is not free from doubt, we conclude that, in order to carry out the mandate of section 726, subdivision (c), that a juvenile "not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted" of the same offenses, appellant must be given precommitment credit for the 46 days he was detained in juvenile hall pending resolution of these charges.

### Computing the Maximum Term

Under section 726, if the juvenile court chooses to "sentence" consecutively on multiple counts or multiple petitions, the maximum term must be specified in accordance with the formula set forth in subdivision (a) of Penal Code section 1170.1, i.e., the sum of the "principal term" (the longest term imposed for any of the offenses) and "subordinate terms" (one-third of the middle term imposed for each other offense).[3]

---

[3]Welfare and Institutions Code section 726, subdivision (c), provides in relevant part: "If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term of imprisonment' shall be specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code."

Penal Code section 1170.1, subdivision (a), provides: "Except as provided in subdivision (b) and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Sections 12022, 12022.5, 12022.6, and 12022.7. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement imposed pursuant to Section 12022, 12022.5 or 12022.7 when the consecutive offense is listed in subdivision (c) of Section 667.5. In no case shall the total of subordinate terms for consecutive offenses not listed in subdivision (c) of Section 667.5 exceed five years."

■ Appellant contends the maximum term specified here was erroneously computed. As stated, the maximum term was determined to be three and one-half years—three years for the burglary and six months for the misdemeanor contempt. In other words, the "aggregate maximum term" was computed here by adding the maximum terms prescribed by law for both the burglary (the principal term) and the misdemeanor contempt (the subordinate term). Appellant contends the court should have imposed only one-third of the maximum of the subordinate offense, i.e., two months. The People respond that Penal Code section 1170.1, subdivision (a), by its terms applies only to consecutive terms imposed for *felony* offenses and that the juvenile court should therefore aggregate any subordinate misdemeanor term by imposing the maximum term prescribed by law, as it did here.

■ "[W]here the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

The interpretation of section 726 urged by the People would lead to the following result: A minor committed for the period of the maximum term for a principal felony offense, and to one-third of the middle term of a "sixteen months, two years, three years" subordinate felony offense, could be confined for an aggregate maximum period four months shorter than a minor committed for the same principal offense but with a subordinate misdemeanor offense having a one-year maximum term. This anomaly does not appear to have been within the contemplation of the Legislature.

■ Although the Legislature clearly indicated its intent that the aggregation provisions of Penal Code section 1170.1, which limit consecutive terms to one-third of the middle determinate term, apply only in imposing sentence for felonies, we are not persuaded that the Legislature intended that this distinction apply in determining the maximum period of confinement for minors committed by the juvenile court. The limitation of section 1170.1 reflects a legislative recognition that misdemeanor terms, unless imposed concurrently with a felony term, are served in local detention facilities and are not part of a continuous period of imprisonment under the supervision of the same correctional officials. The judge who orders that a misdemeanor term be served consecutively to a previously imposed felony term thus retains discretion as

to the length of the misdemeanor term and the power to maintain supervision over the defendant through probation by suspension of execution of the term for an appropriate period. The latter option would in many cases be foreclosed were the term limited to one-third of the maximum term since no realistic sanction for violation of probation would be available.

It is apparent that the considerations leading to the limitation on physical confinement of minors differ markedly from those involved in adult sentencing. The physical confinement to which Welfare and Institutions Code section 726 refers is typically a commitment for a single continuous period of custody under the supervision of a single agency with a unitary rehabilitation plan. By directing in section 726 that the juvenile court measure the maximum period of confinement for "multiple counts" in accordance with subdivision (a) of Penal Code section 1170.1, without restricting the application of the consecutive term provisions of that subdivision to felony counts, the Legislature recognized the different circumstances of juvenile and adult commitments, and indicated its intent that the aggregation provisions of section 1170.1 be applied whether the offenses committed by the minor are felonies or misdemeanors.

The commitment order is modified to recite that appellant's maximum term is three years, two months, and that he is to receive forty-six days credit for time in custody prior to commitment. As modified, the judgment is affirmed.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

NEWMAN, J.—I dissent because I agree with views that Justice Wiener articulated as follows when he wrote the opinion for the Court of Appeal in this case (except that I would rely solely on the California Constitution):

"The Attorney General argues the differential in the period of confinement imposed on youthful offenders is not so disproportionate to the term imposed on adult offenders to involve the application of *Olivas*. When this argument is examined in light of the fundamental interest involved, we conclude the difference in time, modest as it may appear to those whose liberty is not restricted, cannot be constitutionally condoned.

"There are those who will undoubtedly say the juvenile has the best of both worlds. He obtains the benefits of the Indeterminate Sentence Law within the juvenile system with the opportunity of being released earlier than the outer limits of his commitment and the benefits of the limitation of a maximum term determined in accordance with the adult penal system. We do not view this as a dramatic result. It is only consistent with the purpose of the juvenile justice system which will still permit the juvenile to be released at any time before the service of the maximum term if deemed rehabilitated or retained for the maximum term if efforts at rehabilitation are unsuccessful. (Welf. & Inst. Code, § 1176.) As a practical matter, we suspect our decision will have little or no impact on the operation of the Youth Authority. There should be a direct correlation between the length of term imposed and successful rehabilitation of youthful offenders, i.e., those who are more likely to be rehabilitated will be given lesser terms; those less likely, longer terms. We anticipate the same class of offenders upon whom are imposed the upper term because of circumstances in aggravation will be identical to the class that would have otherwise remained incarcerated for the upper term.

"We recognize our decision creates an additional facet to the dispositional hearing (Welf. & Inst. Code, § 706) causing additional work for the presently overburdened personnel within the juvenile court system. We cannot allow this administrative consideration, important as it is, to outweigh the guarantees afforded to minors.

"Because of equal protection of the laws (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)), we conclude the provision within Welfare and Institutions Code section 726 relating to the automatic imposition of the upper term of confinement is unconstitutional. Juvenile courts shall be required to apply the substantive rule of Penal Code section 1170, subd. (b) providing for the sentencing of the middle term unless aggravating or mitigating circumstances have been established in determining a minor's potential term of incarceration."

Bird, C. J., concurred.

Respondent's petition for a rehearing was denied January 17, 1980, and the opinion was modified to read as printed above.