[Civ. No. 18702. Fourth Dist., Div. One. June 24, 1980.]

In re MAURICE H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MAURICE H., Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Wayne Gomez, Stephen J. Perrello, Jr., and Barbara A. Smith for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, Alan S. Meth and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COLOGNE, Acting P. J.**—Maurice H. appeals his commitment to the California Youth Authority (CYA) after the juvenile court found he is a person described in Welfare and Institutions Code section 602 on the basis of its adjudicating two supplemental petitions in a single hearing. Maurice was found to have committed trespass on November 9, 1978 (Pen. Code,[1] § 602, subd. (j)), the subject of the first petition filed November 13, 1978. He was also found to have committed second degree burglary, a felony (§§ 459, 461, subd. 2), and automobile theft (Veh. Code, § 10851), but not receiving stolen property (§ 496, subd. 1) on September 7, 1978, the subjects of the second petition filed on November 21, 1978.

The court aggregated the terms of commitment to the CYA imposing a total of three years and two months. It imposed two years for the felony second degree burglary (punishable by sixteen months, two or three years, §§ 18, 461, subd. 2), eight months for the felony auto theft (one-third the middle terms of two years, §§ 18, 1170.1, subd. (a), Veh. Code, § 10851), and six months for the misdemeanor trespass (§§ 19, 602, subd. (j)). It also credited Maurice with 35 days presentence custody time.

During the night of September 7-8, 1978, the gate was forcibly opened in the fenced multibusiness lot at 4902 Market Street, San Diego, known as Ledbetter's lot. One of the businessmen there, Carlos Fernandez, discovered on the morning of the 8th his pickup truck was

---

[1]All references are to the Penal Code unless otherwise indicated.

stolen from the lot and a drill and calculator were taken from his shop which had been forcibly entered.

Dale Myers, another businessman at Ledbetter's lot, also determined on the 8th his shop had been forcibly entered and tools and equipment were missing. The stolen property included a tool box on rollers, so heavy four men were necessary to lift it.

On September 11, police found Fernandez' truck parked on the 4800 block of Hilltop Drive, about two blocks from Ledbetter's lot. It was apparently abandoned and had one of its tires missing. Maurice's thumbprint was on the truck's rear quarter panel.

On September 13, property taken from Ledbetter's lot, including the tool box, was recovered from the garage of Veronica Fields, mother of a close friend of Maurice. The garage was about two blocks from Ledbetter's lot and Maurice was often there. Paint markings from the truck were on the tool box.

Around 1 a.m. on November 9, 1978, Maurice was arrested after police, summoned by silent alarm to the Marvin K. Brown car lot in Mission Valley, saw him and another boy inside the business' fenced lot. The boys ran, climbed over a back fence and hid in some bushes before the officers caught up with them.

The 16-year-old Maurice testified he knew nothing about the Ledbetter's lot thefts and he was on the car lot for the sole purpose of escaping police discovery of his being in violation of curfew after he was at a party.

Maurice contends the court erred in hearing both supplemental petitions together, arguing he was entitled as a matter of law to have the two petitions heard separately and his failure to object to the consolidation or request severance does not preclude the court from reaching and sustaining his severance claim.

We cannot accept the proposition that no objection or request is required to preserve such an issue for appeal. Even assuming section 954 applies to juvenile court proceedings so as to permit consolidation of counts "connected together in their commission" and to authorize severance of counts for trial in the "interests of justice and for good cause shown" and at the trial court's discretion, the rule is firmly estab-

lished a motion must be made in order to raise the issue on appeal (*People* v. *Fain* (1969) 70 Cal.2d 588, 596 [75 Cal.Rptr. 633, 451 P.2d 65]; *People* v. *Kemp* (1961) 55 Cal.2d 458, 474-476 [11 Cal.Rptr. 361, 359 P.2d 913]; *People* v. *Lyons* (1970) 4 Cal.App.3d 662, 666 [84 Cal. Rptr. 535]; see Witkin, Cal. Criminal Procedure (1963) Trial, § 294, at p. 288; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, pp. 4264-4265).

■ Nor can we view counsel's failure to object or move for severance as reflecting ineffective representation of counsel, as Maurice suggests. In order properly to consolidate counts for trial under section 954, all that is necessary is "there is a 'common element of substantial importance'" not least of which is the modus operandi among the counts (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752]). Again assuming the Penal Code provision applies, it is apparent the counts in the two petitions possessed the important common elements of nighttime intrusions upon fenced and locked business premises. Seeing this, counsel for Maurice might well have been avoiding the futile effort which the motion would represent. This is a tactical decision. Viewing the record in this light, there is no support for Maurice's conclusion trial counsel was ineffective.

Maurice contends the juvenile court erred in ordering the terms of confinement in the CYA to run consecutively because it violates section 654 and the equal protection clauses of the United States and California Constitutions, and because it constitutes an abuse of discretion.

Maurice acknowledges his equal protection argument was before the California Supreme Court in *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549], decided October 22, 1979. *Eric J.* held: "...because minors and adults are not 'similarly situated' with respect to their interest in liberty, and because minors adjudged wards of the juvenile courts and committed to the Youth Authority and adults convicted in the criminal courts and sentenced to prison are not confined for the same purposes, Welfare and Institutions Code section 726 does not deny minors equal protection of the laws." (*Id.*, at p. 533.)

*Eric J.* involved a challenge to the provision the maximum term for a juvenile is the longest imposable on an adult, without the necessity of finding circumstances in aggravation of the crime justifying imposition of the upper term as is required in adult sentencing by section 1170, subdivision (b). ■ Notwithstanding the particular aspect of the sen-

tencing being challenged in *Eric J.* is different from the consecutive sentencing challenged by Maurice, in light of his statement the same issue is present and especially considering the root holdings minors and adults are not similarly situated in connection with their liberty interests and are not confined for the same purposes, the *Eric J.* decision forecloses Maurice's equal protection argument addressed to the consecutive sentencing in his case.

With respect to Maurice's section 654 argument, Welfare and Institutions Code section 726 (eff. Oct. 1, 1977, and applicable in this case) provides, in part: "If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term of imprisonment' *shall be* specified *in accordance with subdivision (a) of Section 1170.1 of the Penal Code.*" (Italics added.)

Section 1170.1, subdivision (a), reads, in part, as follows: "... subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022, 12022.5, 12022.6, or 12022.7. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement imposed pursuant to Section 12022, 12022.5 or 12022.7 when the consecutive offense is listed in subdivision (c) of Section 667.5. In no case shall the total of subordinate terms for consecutive offenses not listed in subdivision (c) of Section 667.5 exceed five years."[2] ■ Thus, section 654 is part and parcel of the consecutive sentencing provisions of section 1170.1, subdivision (a), referred to in

[2]Section 1170.1 has been amended in a manner not bearing on the issue before us (Stats. 1980, ch. 132, urgency, eff. May 29, 1980).

Welfare and Institutions Code section 726. Section 654 prevents double punishment for a single act or where there is a course of conduct that violates more than one statute and comprises an indivisible transaction (*People v. Ridley* (1965) 63 Cal.2d 671, 677 [47 Cal.Rptr. 796, 408 P.2d 124]). The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the actor may be punished for any one of them but not for more than one (*People v. McFarland* (1962) 58 Cal.2d 748, 760-762 [26 Cal.Rptr. 473, 376 P.2d 449]). The course of conduct here was to effect entering Ledbetter's lot to take a truck and equipment, an indivisible transaction with one objective, theft. Punishment for the auto theft must be stayed pending service of time on the burglary offense.

*In re Aaron N.* (1977) 70 Cal.App.3d 931, 940 [139 Cal.Rptr. 258], and *In re Benny G.* (1972) 24 Cal.App.3d 371, 375, footnote 3 [101 Cal.Rptr. 28], holding section 654 does not apply to juvenile court sentencing, are not controlling since they predate the 1977 amendment to Welfare and Institutions Code section 726 requiring aggregate confinement in accordance with Penal Code section 1170.1, subdivision (a), which, in turn, specifies such consecutive sentencing is subject to section 654.

We note, however, under *In re Eric J., supra*, 25 Cal.3d 522, 537, there is error in the subordinate term fixed by the commitment for the misdemeanor trespassing offense. The commitment set that term at the maximum of six months (§§ 19, 602, subd. (j)). Under *Eric J.*, only one-third of the maximum for the subordinate offense should have been imposed. Thus, the commitment order must be amended to reflect the correct two months subordinate term for the trespassing offense.

Moreover, an upward modification of the principal term for the burglary must be made.[3] The trial court imposed the middle term instead of the upper term as required by Welfare and Institutions Code section 726 which reads, in part: "...the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult

---

[3]It is questionable whether this issue has been properly raised since, originally, it is mentioned only in a single-spaced footnote at page 21 of the respondent's brief rather than correctly as a separately appearing point under an appropriate heading or subheading (Cal. Rules of Court, rule 15(a)). Nevertheless, in light of the strong, clearly expressed statutory policy and case authority involved, we deal with the contention.

convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court.

"As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled.

"If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward with Section 602, the 'maximum term of imprisonment' shall be specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code.

"If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law."

*In re James A.* (1980) 101 Cal.App.3d 332 [161 Cal.Rptr. 588], held under this straightforward statutory language that juvenile courts do not have the same discretion in determining a minor's term of commitment to the CYA as superior court judges have in fixing an adult criminal's sentence under the determinate sentencing law; the section "is clearly directive and requires the juvenile court judge to automatically specify in his commitment order the maximum period of confinement corresponding to the applicable upper terms set forth in Penal Code, section 1170, subdivision (a) (2)." (*Id.*, at p. 339.) We accept this holding, recognizing, of course, the indeterminate nature of the term of commitment to the CYA, as outlined in *In re Eric J., supra*, 25 Cal.3d 522, at pages 531 to 532 (see *In re Robert D.* (1979) 95 Cal.App.3d 767, 774-775 [157 Cal.Rptr. 339]). Accordingly, Maurice's principal term must be modified to reflect the maximum term for the second degree burglary, three years (§§ 18, 461, 1170, subd. (a)(2) and 1170.1, subd. (a); Welf. & Inst. Code, § 726).

As a result of our holdings that (1) section 654 applies (thus eliminating the eight-month term for the vehicle theft), (2) the subordinate misdemeanor term must be modified to one-third of six months (a two-

month term), and (3) the principal term must be specified as the maximum (three years), there is no change in the aggregate "period of physical confinement on multiple counts, or multiple petitions" in Maurice's case (Welf. & Inst. Code, § 726). Nevertheless, it is important juvenile court commitments reflect the law as it is written, and particularly that portion of Welfare and Institutions Code section 726 requiring the maximum term of imprisonment to be "specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code." Accordingly, we require appropriate modification of the order under review.

Maurice contends the trial court erred in failing to make correct findings as to the amount of credits due for time served, good time and work time.

On the matter of credit due for time served, the record on appeal, as augmented, shows the juvenile court properly credited Maurice with 35 days of time in custody to the date he was committed to the CYA, December 14, 1978 (*In re Eric J., supra*, 25 Cal.3d 522, 536). The amended commitment to the CYA form dated July 19, 1979, and made nunc pro tunc to December 14, 1978, reflects the 35 days' credit as does a corrected jurisdiction/authorized confinement record form prepared by the CYA and dated July 26, 1979.

With respect to the question of time spent in juvenile hall between the date of Maurice's commitment, December 14, 1978, and his actual physical receipt in a CYA facility "sometime in early January" 1979, according to his brief, there is no issue cognizable on this appeal. As the record on appeal now stands, there is no hint the CYA is not recognizing this particular postjudgment time period as part of the term of the commitment ordered by the juvenile court. Should such a problem arise, Maurice may petition for a writ of habeas corpus.

In connection with Maurice's good time/work time credit claim based on equal protection principles in combination with the credit accorded to adults under section 4019, in *People* v. *Sage* (1980) 26 Cal.3d 498, at pages 501, 503 and 505 to 507 [162 Cal.Rptr. 450, 606 P.2d 757], the court held that adult convicted felons, although not statutorily entitled to presentence "conduct" credit under section 4019, are entitled to such credit under equal protection principles. ■ Accordingly, by merging together the holdings of *Sage* and *In re Eric J., supra*, 25 Cal.

3d 522, at page 536, a juvenile is entitled to conduct credit, if earned, for presentence confinement.[4]

■ Maurice's last contention is the petition charging new criminal misconduct should have been filed in a new and separate proceeding rather than under the same number and file as was done in his case. The evil he cites as accompanying this practice is a threat of prejudice by exposure of his trier of fact to the prior history and he claims the filing of allegations of new criminal conduct in an old file violates the Welfare and Institutions Code as properly construed.

The record shows five previous petitions under Welfare and Institutions Code section 602 were filed under the same court number as used for the present two petitions. Maurice states the court file contains many facts bearing on the case if the proper supplemental petition procedure of Welfare and Institutions Code section 777 had been followed, but the petition here is "totally devoid of any reference to these facts and the transcript of the hearing is devoted exclusively to evidence of the instant offenses."

The quoted statement belies any claim of prejudice attending use of the old file number in Maurice's case. Accordingly, the record shows no prejudice occurred as a result of a single file number assigned to Maurice's cases and thus there is no ground for reversal (Cal. Const., art. VI, § 13; see *In re Michael V.* (1974) 10 Cal.3d 676, 683 [111 Cal.Rptr. 681, 517 P.2d 1145]; *In re Gladys R.* (1970) 1 Cal.3d 855, 859-861 [83 Cal.Rptr. 671, 464 P.2d 127]). In the final analysis, the adjudication of the allegations contained in the petition is the all-important matter. The petition's number plays no role in that adjudication, serving only a record keeping and finding function. The mere fact of the existence of an old court number on the present file, absent a showing the judge saw the size or content of the record, simply does not connote there was any communication or knowledge of the minor's record. Since there is no

[4]The basis of the precommitment credit holding of *In re Eric J., supra,* was a construction of the portion of Welfare and Institutions Code section 726, subdivision (c), stating a juvenile "may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted" of the same offenses. An adult's "maximum term" would be calculated after application of the Penal Code section 2900.5 presentence credit. Thus, in order to keep the juvenile's term within the same maximum, it is necessary to apply a similar credit to the juvenile's term (*id.,* at pp. 535-536). The same interpretive approach makes the Penal Code section 4019 type conduct credit available to persons such as Maurice by the juvenile court.

showing there was such communication or knowledge, we must presume regularity attended the adjudicating proceeding (Evid. Code, § 664).

Otherwise, the case was processed in a manner approved by cases such as *In re John G.* (1972) 72 Cal.App.3d 242 [139 Cal.Rptr. 849], where the court states: "[B]y using a petition under section 602, only the latest new criminal offense must be pleaded, and other elements going to disposition appear, after the adjudication hearing, in the 'social study' provided for in section 702 and in any evidence introduced at the disposition hearing." (*Id.*, at p. 246.)

Accordingly, no basis for concluding there was error in the use of the old file number exists in this case.

The commitment order is modified to recite Maurice's maximum term is three years and two months, consisting of three years for the burglary and two months for the trespass, with the term for the auto theft stayed pending service of the consecutive terms as so modified, at which time the stay shall become permanent.

The California Youth Authority is directed to grant Maurice whatever behavioral credit he has earned during predisposition confinement on his current petition. As modified, the order is affirmed.

Wiener, J., and Henderson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 28, 1980. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.