[Civ. No. 22766. Fourth Dist., Div. One. Mar. 16, 1981.]

In re JOHN R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOHN R., Defendant and Appellant.

942

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jeffrey J. Stuetz, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, J.**—After shooting his father in the face while asleep in bed and in other portions of his body when struggling over the gun, John R. appeals a juvenile court order committing him to the Youth Authority for attempted murder (Pen. Code,[1] §§ 187 and 664), while personally using a firearm within the meaning of sections 12022, subdivision (a), and 12022.5; and intentionally inflicting great bodily injury within the meaning of section 12022.7.

■ He claims to have been incorrectly committed for twelve years (the nine-year upper term pursuant to the general attempt statute (§ 664) plus a three-year consecutive term for the § 12022.7 enhancement), contending the court was limited to the statutory term for *assault with intent to commit murder* (§ 217).

■ He correctly claims predispositional behavioral credits.[2]

---

[1] All references are to the Penal Code unless otherwise specified.

[2] As a juvenile John's maximum term of confinement is calculated pursuant to Welfare and Institutions Code section 726, subdivision (c)—providing in relevant part: "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled." (Amended

■ John incorrectly argues application of Welfare and Institutions Code sections 607, 726 and 1769 denies him due process and equal protection of the laws because he faces a possible maximum term of confinement greater than that to which older juveniles, under the age of 16, who commit identical offenses are exposed.

## I

■ The juvenile court did not err in applying the nine-year base term of the general attempt statute (§ 664) on these facts where both attempted murder and assault with intent to murder (§ 217) were alternatively charged and the court found the multiple shooting to be attempted murder and dismissed the assault charge.[3]

Where the facts show acts of violence actually inflicted on the victim in an attempt to consummate the murder, the activities have gone beyond a mere assault with intent to murder and may be punished under the general attempt statute. (*People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333].) Section 217 does not expressly provide a punishment tailored for an attempted murder which includes violent elements beyond the actual assault. Prompt action of the Legislature in repealing section 217[4] following decisions contrary to ours in *People* v. *Gray* (1979) 91 Cal.App.3d 545, [154 Cal.Rptr. 555], and *People* v. *Montano* (1979) 96 Cal.App.3d 221 [158 Cal.Rptr. 47], reinforce our view in this regard.

## II

■ John is entitled to whatever behavioral credits he has earned during predispositional confinement. (*In re Eugene R.* (1980) 107 Cal.App.3d 605 [166 Cal.Rptr. 219]; *In re Maurice H.* (1980) 107 Cal.App.3d 305, 316 [166 Cal.Rptr. 213]; cf. *People* v. *Reynolds* (1981) 116 Cal.App.3d 141 [171 Cal.Rptr. 461].)

---

by Stats. 1976, ch. 1068, § 53, p. 4790; Stats. 1976, ch. 1071, § 29, p. 4827; Stats. 1977, ch. 1238, § 1, p. 4158-4159, urgency, eff. Oct. 1, 1977.)

[3]Section 664 provides in part: "Every person who attempts to commit any crime, but fails ... is punishable, *where no provision is made by law for the punishment of such attempts* ...." (Italic added.)

[4]Statutes 1980, chapter 300, section 2.

## III

■ John's constitutional argument is not as straightforward. He committed his crime at age 15 and now contends differing possible maximum terms of confinement between younger and older juveniles committing identical offenses *below the age of 16* denies due process and equal protection. To remedy this denial he asserts all juveniles below the age of 16 must be subject to the same maximum term of confinement—computed as if their offenses were committed one day short of their 16th birthday.

Welfare and Institutions Code section 726, subdivision (c), *supra*,[5] provides in part a "minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the [same] offense." Juvenile authorities, however, lose jurisdiction over a minor who violates the law before the age of 16—at the age of 21—unless an order for further detention is made upon a showing that such an individual is physically dangerous to the public. ■ ■ ■ ■ (Welf. & Inst. Code, §§ 607, subd. (a), and 1769, subd. (a).)[6]

■ John's argument is, therefore, factually correct. As long as the maximum term of confinement computed under Welfare and Institutions Code section 726, subdivision (c), is longer than the juvenile authority's jurisdiction, absent the extraordinary showing of dangerousness, an older juvenile committing his offense before the age of 16 *may* indeed be confined by the juvenile authorities for a shorter period of time than a younger juvenile committing the same offense in spite of the computation of equal maximum terms of confinement. In the present case, absent a showing of dangerousness, a juvenile committing an offense identical to John's one day short of his sixteenth birthday may be confined no longer than five years and one day—notwithstanding the

---

[5]See footnote 2, *ante.*

[6]An order for further detention may be made pursuant to Welfare and Institutions Code section 1800 et seq., upon a showing that a ward of the Youth Authority would be physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality. Such an order is, however, extraordinary and a person detained under one is entitled to a jury trial on the issue of dangerousness. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 241, fn. 8 [131 Cal.Rptr. 55, 551 P.2d 375]; *In re Gary W.* (1971) 5 Cal.3d 296, 303-308 [96 Cal.Rptr. 1, 486 P.2d 1201]; *People* v. *Smith* (1971) 5 Cal.3d 313, 315-316 [96 Cal.Rptr. 13, 486 P.2d 1213]; see also Welf. & Inst. Code, §§ 1801.5 and 1769, subd. (a).)

court's computation of a longer maximum term, whereas John, eight months younger, is exposed to a five-year and eight-month term. This disparity is not unconstitutional.

"'"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."'" (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549], quoting *In re Gary W., supra*, 5 Cal.3d 296, 303.) Although the dual purposes of rehabilitation and treatment underlie the state's commitment of each juvenile who is adjudged a ward of the court (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65]), every juvenile who is committed to the Youth Authority is not necessarily "similarly situated."

The distinction relies upon two supportive prongs: First, juvenile commitment proceedings are designed for the purposes of rehabilitation, not punishment (*In re Aline D., supra*, 14 Cal.3d 557, 567); and second, rehabilitation is not accomplished in the same manner or time for every juvenile.

In 1976 the Legislature enacted the Uniform Determinate Sentencing Act (DSL) reflecting its change in penal philosophy respecting adult offenders. The stated purpose in imprisonment for crime is now *punitive* rather than rehabilitative (§ 1170, subd. (a)(1)). "There has been no like revolution in society's attitude toward juvenile offenders," however (*In re Eric J., supra*, 25 Cal.3d 522, 531), and the statutory distinction between minors below the age of 16 and those above retains its meaning.

If John had committed this offense 8 months later—at the age of 16 —pursuant to Welfare and Institutions Code section 707, he might have been treated as an adult offender, subject to the full maximum term prescribed under the DSL. (See Welf. & Inst. Code, §§ 1780-1781.) Because he committed his offense before reaching sixteen, however, the juvenile authorities must treat him as a juvenile—whom absent a finding of dangerousness they must release after five years and eight months—three years earlier than an adult convicted of an identical offense. (See Welf. & Inst. Code, §§ 607, subd. (a), and 1769, subd. (a), *supra*.) John may not require the same

system to release him an additional eight months early simply because it loses jurisdiction over minors at the age of twenty-one.[7]

To so restrict the juvenile system would be tantamount to imposing a lesser *determinate sentence* upon juvenile offenders below the age of 16 for offenses which would otherwise be punishable by a longer term. Such a result not only takes on the appearance of punishment but is also inconsistent with the juvenile structure requiring *indeterminate sentencing* in order to accomplish its rehabilitative goals.

Each juvenile below the age of 16 is unique with individual needs and requiring individual rehabilitative approaches. As long as the purposes underlying juvenile commitment remain rehabilitative therefor, rather than punitive, juvenile authorities must be free to implement their programs as fully as possible. Their freedom in this respect is impeded when, notwithstanding the seriousness of the offense, a juvenile may be under their jurisdiction for no longer than five years and one day.

The juvenile authority's ability to rehabilitate John is limited already by its need to remove *adults* from the juvenile stream. (See Welf. & Inst. Code, § 607, *supra*.) We see no need for further restriction. All juveniles below the age of 16 are not similarly situated with respect to their rehabilitative needs. Therefore, there is no constitutional prohibition to prevent retaining jurisdiction over a juvenile offender until age 21 even though by so doing disparate lengths of jurisdiction may be imposed on juveniles who are committed for identical crimes.

The Youth Authority is directed to compute and award John R. predispositional behavioral credits in accordance with this opinion. As modified the orders are affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1981.

---

[7]As previously noted, while John's maximum term of confinement is calculated at nine years under the DSL, absent a finding of dangerousness, he will be retained in custody no longer than five years, eight months. His actual term of confinement, therefore, will in all probability be three years less than it might have been had he committed the instant offense eight months later—at the age of sixteen—when under Welfare and Institutions Code section 707 he may be treated as an adult.