Filed 3/15/13  P. v. Johndrow CA3
Opinion on remand from Supreme Court

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C055620 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 95F7001, 93F3391) |
| v. | |
| GLENN ARTHUR JOHNDROW, | |
| Defendant and Appellant. | |

In April 2007 a jury found defendant Glenn Arthur Johndrow was a sexually violent predator (SVP) within the meaning of the Sexually Violent Predator Act (SVPA; Welf. and Inst. Code, § 6600 et seq.), and the court committed him to the Department of Mental Health (DMH) for an indeterminate term.[1]

Defendant appealed, contending that (1) he had a due process right to testify over his counsel's objection, and (2) recent amendments to the SVPA permitting indeterminate

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

commitments were unconstitutional pursuant to principles of federal and state due process and equal protection.

In July 2009 we filed our opinion rejecting defendant's contentions and affirming the commitment.

In September 2009 the California Supreme Court granted review in this case and deferred further proceedings pending disposition of related issues in *People v. McKee*, review granted July 9, 2008, S162823. In January 2010 the Supreme Court issued its opinion in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), concluding, contrary to several Court of Appeal decisions, that SVP's were similarly situated to mentally disordered offenders (MDO; Pen. Code, § 2960 et seq.) and to persons found not guilty of a criminal offense by reason of insanity (NGI; Pen. Code, § 1026 et seq.) for purposes of the SVPA. (*McKee I*, at p. 1207.) *McKee I* remanded the matter to the San Diego County Superior Court to permit the People the opportunity to show that under equal protection principles there existed "constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208-1209.)

In May 2010 the Supreme Court transferred the instant case back to this court with directions to reconsider our decision in light of *McKee I* and to suspend consideration of defendant's equal protection argument pending "finality of the proceedings on remand in *McKee*."

In June 2010 we reconsidered and reaffirmed our rejection of the issues raised by defendant, except for the equal protection argument preserved by the Supreme Court in *McKee I*, for which we suspended further proceedings.

The San Diego Superior Court conducted the evidentiary hearing required by *McKee I*, concluded the People had met their burden of justifying the disparate treatment of SVP's, and affirmed the indeterminate commitment. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1332 (*McKee II*).) In October 2012 the Supreme Court denied

review and *McKee II* became final.  We now address in part III the equal protection issue reserved by the Supreme Court.[2]

**FACTS**

Dr. Jeffrey Davis, a psychologist who conducted SVP evaluations for DMH and the only witness at defendant's trial, testified that on May 25, 2006, he interviewed defendant to determine whether defendant was an SVP.  Prior to the interview, Dr. Davis reviewed materials prepared by the probation department, DMH, and the Department of Corrections as well as progress reports prepared by various medical staff, technicians, and the manager of the conditional release program.

Dr. Davis also reviewed defendant's three prior sex-related convictions that qualified as predatory sex offenses.  These were as follows.

In 1986 defendant was convicted of lewd conduct with a child under 14 years of age.  Defendant "volunteered" to take a developmentally disabled 12-year-old boy who was attending the Special Olympics to the bathroom.  Once in the bathroom, defendant fondled and orally copulated the boy.  Defendant admitted the conduct and stated that prior to taking the boy into the bathroom he had been thinking of finding a child and having sex as soon as the situation presented itself.  Defendant said that he enjoyed what he had done and that "he sucks penises every chance he gets."

In 1994 defendant was convicted of sodomy with an incompetent person. Defendant forced a 22-year-old developmentally disabled male onto a bed and "forcibly penetrated his anus with [defendant's] penis" and threatened to send the "Hell's Angels" after the victim if he told anyone what had happened.  Defendant admitted the sodomy as

---

[2] To avoid confusion, we set forth our entire earlier decision.  (*People v. Johndrow* (July 1, 2009, C055620 [vacated by order of Supreme Ct. May 20, 2010].)  The equal protection argument is addressed in Section III under the heading "Equal Protection," at pages 11 through 13, *post*.

well as fondling and orally copulating the victim's penis, but claimed that the acts were consensual and the comment about the Hell's Angels was a joke.

In 1995 defendant was convicted of lewd conduct with a child under 14 years of age. Defendant admitted twice fondling the penis of, and was caught kissing, the five-year-old son of a woman who was living with defendant and defendant's wife.

In addition to the above SVP qualifying offenses, defendant also committed several other sexual offenses and had two misdemeanor convictions for sexual misconduct. In 1980 defendant was convicted of lewd conduct with a child after having an eight- or nine-year-old boy orally copulate him while he orally copulated a seven-year-old girl as she squatted on his face.

In 1994 defendant was convicted of misdemeanor sexual battery. He admitted that he repeatedly propositioned a woman at a bus stop, followed her into a public bathroom when she tried to get away from him, put his hand inside her pants, and fondled her vagina. Defendant told Dr. Davis that he was "quite intoxicated" and "out of control" when this happened.

In 2003 defendant was found in violation of parole for putting his finger into the anus of a 21-year-old autistic man, conduct that defendant said he liked doing.

Defendant believed that sex with a child was "okay" if he perceived the child as consenting. Defendant admitted to having as many as 24 victims, half of whom were children.

Dr. Davis diagnosed defendant as being mildly mentally retarded and having two sexual mental disorders, each of which is incurable but subject to management. One is pedophilia, nonexclusive type, which means that the person is 16 years of age or older and has had and acted upon recurrent and intense sexually arousing fantasies involving prepubescent children, generally 13 years of age or younger, over a period of at least six months. The other is paraphilia, not otherwise specified, nonconsenting partners, meaning he is sexually aroused by "someone who doesn't want the sexual contact."

4

Dr. Davis administered the Static 99 and MNSOST-R tests to determine defendant's propensity for reoffending. From these he concluded that defendant was a high risk to commit another sexually violent offense if released. In sum, Dr. Davis opined that based upon defendant's history and testing he still was an SVP.

## I

Defendant contends the trial court prejudicially erred when it denied his request to testify at his trial. The People argue that defendant did not request to testify and therefore forfeited the issue for appeal. If not forfeited, the People continue, defendant had no right to testify, and in any event, the error was harmless beyond a reasonable doubt. We conclude defendant made a request to testify, thereby preserving the issue for appeal, and that the court erred in denying the request, but the error was harmless beyond a reasonable doubt.

Following Dr. Davis's testimony, counsel requested that the court conduct a *Marsden* hearing. (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).) During the course of that hearing counsel informed the court that defendant "wishes to take the stand" to "testify as to those factors that are in mitigation, exactly as the doctor did." Counsel stated he did not want defendant to testify because defendant would be subject to cross-examination, which would bring in more damaging information as well as cause defendant to get "worked up" because he "doesn't hold up very well."

When it became clear to the court that defendant was not seeking to discharge his counsel, i.e., this was not a *Marsden* motion, the court stated it intended to reconvene with the jury present. Defendant then stated twice that what he wanted was to "be on the stand." The court concluded the hearing, and when the jury returned defense counsel rested.

The People concede that defendant informed the court he wanted to take the stand but argue that because he did not expressly state that the basis for his request was the due process argument he now advances, the issue is forfeited. We disagree. Whether

5

defendant has a due process right to testify, over his counsel's objection, at an SVP hearing presents a pure question of law and therefore is reviewable without an objection in the trial court. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880-889.)

Following the filing of the briefs in this case, the California Supreme Court filed its opinion in *People v. Allen* (2008) 44 Cal.4th 843, holding that a defendant in an SVP proceeding has a right under the due process clauses of the federal and state Constitutions to testify over the objection of his or her counsel. (*Id.* at pp. 848, 870.) The court further held that the denial of the right to testify is subject to the harmless error analysis set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705], namely, the reviewing court must be able to conclude that the error was harmless beyond a reasonable doubt. (*Allen*, *supra*, 44 Cal.4th at pp. 848, 871-872.)

Consequently, the trial court erred when it did not honor defendant's request to testify. The only question is whether the error was harmless.

Here, Dr. Davis recounted to the jury defendant's extensive and violent record of sexual offenses, which included his sexual assaults on children and adults, both male and female, some of whom were developmentally disabled. Indeed, defendant admitted to having as many as 24 victims, about half of whom were children. Dr. Davis diagnosed defendant with pedophilia and paraphilia, which are lifelong conditions subject to management but not to being cured. Objective testing showed that defendant was a high risk to reoffend by committing another sexually violent offense.

Dr. Davis also observed that defendant was in phase two of a five-phase treatment program at the hospital where he was confined. And while defendant recognized he had a sexual problem and was "doing his best," he was still "struggl[ing] . . . , probably entirely because of his intellectual deficits."

Although defendant did not testify, his defense, as argued by counsel, was to challenge Dr. Davis's opinion for bias based on his employment as a psychologist for DMH, his payment by that department, and his recommitment recommendation in 18 out

6

of 19 cases similar to defendant's. Defense counsel also argued that the tests used in predicting defendant's likelihood of reoffending were unreliable because they were not designed specifically for SVP's and the factors favorable to defendant or neutral were not properly weighed. Counsel pointed out that Dr. Davis had testified that defendant had participated in, and learned to the best of his ability from, the hospital treatment program. Counsel noted factors favorable to defendant's release: defendant had an adult girlfriend, which showed that he was focused "in the correct area"; defendant had been forthright with Dr. Davis and had not tried to hide anything; and in the last year "[defendant's] fantasies and focus no longer are on children."

Defendant argues that had he been allowed to testify he could have told the jurors "how hard he had worked in the program's classes, how much he had learned about his mental disorder, and how he could now control his sexual urges," which "would have been supportive of his presented defense, and would likely have caused the jurors to accept this defense."

The argument is not persuasive. Dr. Davis testified that defendant worked hard in the program, was learning about his mental disorder, and over the past year had not fantasized sexually about children. Since these points were conceded by Dr. Davis, they were not in issue and defendant's testimony would have added nothing to his position. Thus, the only issue was whether defendant was able to control his sexual urges.

As to this issue, Dr. Davis believed defendant was at high risk to reoffend in a sexually violent manner based upon defendant's testing, his assaultive history, his "struggl[ing]" with the inpatient treatment program, and his completion of less than 40 percent of the program. Aside from defendant's belief that he had now progressed to the point where he was no longer an SVP, he proffered no basis to support that position. It is inconceivable that the jury would reject the insight and reasoning of Dr. Davis, with his extensive training and knowledge in evaluating SVP's, in favor of the assertions of

7

the mildly retarded defendant, who could offer only his personal belief that he now could control his sexual urges. The error was harmless beyond a reasonable doubt.

## II

Defendant contends that his commitment to DMH for an indeterminate term subject only to the limited review contained in sections 6605 and 6608 violates his right to due process under the Fourteenth Amendment to the United States Constitution. We disagree.

**Due Process**

"[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (*Addington v. Texas* (1979) 441 U.S. 418, 425 [60 L.Ed.2d 323].) "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484].) Relevant factors in determining the adequacy of protections provided include (1) the private interest affected by the official action, (2) risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional safeguards, and (3) the government's interest. (*Ibid*.) To pass constitutional muster, a state law infringing on personal liberty must be narrowly drawn to serve a compelling state interest. (*Reno v. Flores* (1993) 507 U.S. 292, 301-302 [123 L.Ed.2d 1].)

SVP's are afforded a full panoply of due process protections before commitment to DMH for an indeterminate term of custody, including the right to counsel, trial by jury, the right to retain experts or other professionals, and a requirement of proof beyond a reasonable doubt. (See § 6600 et seq.) Defendant's arguments present the question of "how much process is due" when the defendant thereafter seeks release from the commitment based on a purported change in mental condition. Defendant contends that sections 6605 and 6608 of the SVPA, which provide for review of indeterminate commitments, violate due process guarantees because the review they provide is not

narrowly tailored to serve the state's interest in protecting society from persons who are presently dangerous because of mental illness.  We reject the contention.

Insofar as is relevant to this appeal, sections 6605 and 6608 provide as follows: section 6605, subdivision (a) provides for an annual review of a committed person by DMH to determine whether the person is still an SVP and whether conditional release to a less restrictive alternative or unconditional release with conditions imposed would adequately protect society.  If DMH determines the person no longer meets the definition of an SVP or conditional release to a less restrictive alternative is in the best interest of the person and can protect the community, it must, pursuant to subdivision (b), authorize the person to file with the court a petition for unconditional or conditional release.  Upon receipt of the petition the court must set a probable cause hearing.

If, at the probable cause hearing, the court determines the person's mental disorder has changed so that it is no longer likely he or she will engage in sexually violent criminal behavior, the court must set the matter for trial.  (§ 6605, subd. (c).)

At the trial, the person is entitled to all of the constitutional protections he or she enjoyed at the initial commitment proceedings, and the state has the burden of proving, beyond a reasonable doubt, that the person's diagnosed mental disorder remains such that he or she is likely to engage in sexually violent criminal behavior if discharged.  (§ 6605, subd. (d).)  If the trier of fact decides adversely to the person and DMH still believes the person is no longer an SVP, DMH must seek judicial review of the decision.  (§ 6605, subd. (f).)

If the person does not qualify for a DMH-authorized petition, the person may still file a petition for conditional or unconditional release and is entitled to the assistance of counsel.  (§ 6608, subd. (a).)  If the court finds the petition frivolous or that it fails to allege sufficient facts warranting a hearing, then it summarily denies the petition.  (*Ibid.*) If the court finds otherwise, the matter is set for trial and the defendant bears the burden of showing, by a preponderance of the evidence, that he is entitled to release.  (§ 6608,

9

subds. (a), (i).) If the court rules against the person for unconditional release, the court still may place the person on outpatient status. (§ 6608, subd. (g).)

Defendant argues that section 6605 denies due process because it leaves the determination of whether to authorize the person to file a petition in the "absolute discretion" of DMH without any provision for judicial review. Section 6608 denies due process, defendant claims, because the person is not entitled to the assistance of an expert and bears the burden of proof at all hearings ordered by the trial court. These procedures, defendant concludes, "create an unacceptable risk that an SVP detainee who no longer qualifies as a sexually violent predator will have his commitment continued" because "[a]fter the initial commitment, the SVP detainee has no right to a hearing on the merits to determine if his detention should be continued."

It is true the decision of DMH to authorize judicial review is not itself subject to judicial review. However, the Legislature provided an alternative path to judicial review, unobstructed by DMH. A defendant can petition the court directly with the assistance of assigned counsel. A petition filed under section 6608 may not be as warmly received as one filed under section 6605 because it lacks the support of those who are arguably in the best position to assess the defendant's mental health. Nonetheless, defendant cannot claim he is denied access to the courts to present a claim of changed circumstances.

Defendant can more plausibly object to the disparate treatment afforded petitioners under section 6608. But those objections also fail. Thus defendant claims section 6608 denies due process because he is not entitled to an expert to assist him under section 6608. While it is true that section 6608 does not expressly provide for such an appointment, section 6605 does so require. Pursuant to subdivision (a) of section 6605, a person committed as an SVP is entitled to an annual evaluation and report, prepared by a qualified professional, which must consider whether the person remains an SVP and whether conditional release is a viable alternative. This report is then filed with the court and provided to the person. Thus, a person filing an unauthorized-DMH petition under

10

section 6608, who is entitled to the assistance of counsel, would be in possession of a recent evaluation by a qualified professional, that is to say, an expert.

Defendant also claims section 6608 denies him due process because it requires him to prove by a preponderance of the evidence that his condition is now so changed that he is entitled to release, conditional or otherwise. This procedure, as defendant sees it, "can easily result in the situation where the commitment of a person who suffers from no mental illness continues." We disagree.

In the circumstances of an SVP hearing, placing the burden on the person to prove that he or she is entitled to release is not a denial of due process, and fear of unwarranted continuing commitment is not reasonably founded. A person petitioning under section 6608 has already been found beyond a reasonable doubt to be an SVP, i.e., to be an individual with a mental illness that causes him or her to be likely to reoffend. Persons suffering mental disorders causing them to be SVP's have been recognized as generally requiring long-term treatment. (See Fla. Stat., § 394.910; Iowa Code, § 229A.1; Kan. Stat. Ann., § 59-29a01; Ramsey, *California's Sexually Violent Predator Act: The Role of Psychiatrists, Courts, and Medical Determinations in Confining Sex Offenders* (1999) 26 Hastings Const. L.Q. 468, 488.) Under such circumstances, it is not unfair or unreasonable to give the prior adjudication preclusive effect, absent proof of some change in the committed person's mental condition. Hence, where the committed person is the one asserting that change, contrary to the extant determination of DMH, it is not unfair or unreasonable to require the committed person to carry the burden of proof. (See Evid. Code, § 500 ["a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].)

### III

**Equal Protection**

Defendant contends that committing him to the DMH for an indeterminate period violates state and federal principles of equal protection because MDO's and NGI's,

groups with which he is similarly situated, are not subject to indeterminate commitments and can more readily obtain review of their commitments. We conclude no equal protection violation has been shown.

"The 'first prerequisite' to an equal protection claims is ' "a showing that the 'state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " . . .' [Citation.] [¶] . . . The state 'may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of power.' [Citation.] [¶] 'Strict scrutiny is the appropriate standard against which to measure claims of disparate treatment in civil commitment. [Citations.]' [Citation.] Under the strict scrutiny standard, ' " '*the state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' [Citation.]" [Citation.]' [Citation.]" (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1216-1217.) "The state has compelling interests in public safety and in humane treatment of the mentally disturbed. [Citation.] It may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 171-172, fn. omitted.)

In *McKee I*, the Supreme Court determined that, contrary to the Court of Appeal's initial determination, SVP's were similarly situated with MDO's and NGI's for purposes of obtaining release from their respective commitments and that the appropriate standard for analyzing whether differing treatment was justified was that of strict scrutiny, i.e., whether the state has a compelling interest in treating the classes differently. (*McKee I*, *supra*, 47 Cal.4th at pp. 1207-1210.) The Supreme Court then remanded the case to the

12

trial court "to permit the People the opportunity to justify the differential treatment in accord with established equal protection principles." (*Id.* at p. 1184.)

The superior court concluded the evidence presented by the People constituted substantial evidence to support a reasonable perception that SVP's pose a greater danger to society than do MDO's and NGI's. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) The Court of Appeal, after conducting an independent review of the evidence, agreed with the trial court. The appellate court found that the People's evidence had established " 'the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception . . . that the disparate treatment of SVP's under the amended [SVPA] is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. [Citation.]" (*Ibid.*)

The equal protection issue raised by *McKee I* now having been resolved and no grounds having been advanced for rejecting that decision, we agree with *McKee II* and therefore reject defendant's equal protection challenge.

## DISPOSITION

The judgment is affirmed.

                                          RAYE          , P. J.

We concur:

          HULL          , J.

          BUTZ          , J.