Filed 8/9/22  In re M.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>M.C.,<br><br>  Defendant and Appellant. | F083014<br><br>(Super. Ct. No. JJD069538)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  John P. Bianco, Judge.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Smith, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

Appellant M.C. contends the juvenile court abused its discretion when it committed him to the Division of Juvenile Justice (DJJ),[1] because the record lacks substantial evidence a DJJ commitment would necessarily benefit appellant. He further contends the court abused its discretion because it failed to consider changes in law prohibiting commitment to the DJJ on or after July 1, 2021. (§§ 733.1, subd. (a); 736.5, subd. (b).) He also contends the court erroneously set his maximum term of confinement on count 1, and on the enhancements to counts 2 and 3, at the upper term rather than the middle term. Lastly, he contends he is entitled to predisposition custody credits for time spent on electronic monitoring. To the extent any of these claims are forfeited or waived, he claims ineffective assistance of counsel.

We will modify the maximum term of confinement on count 1, and on the enhancements to counts 2 and 3, to reflect the middle term. We will remand with directions for the juvenile court to issue a new disposition order reflecting the reduced term. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Prior Petitions

On February 2, 2016, the Tulare County District Attorney filed a section 602 juvenile wardship petition, alleging that appellant committed two counts of misdemeanor battery on January 31, 2016. (Pen. Code, § 242; counts 1, 2.) On April 12, 2016, appellant was placed on informal probation. (§ 654.2.)

---

[1] Effective July 1, 2021, the responsibilities for the agency formerly known as Division of Juvenile Justice were transferred to the newly created Office of Youth and Community Restoration (OYCR). OYCR is part of the California Health and Human Services Agency. (See Gov. Code, § 12803; Stats. 2020, ch. 337, Sen. Bill No. 823 (2019-2020 Reg. Sess.); see also Welf. & Inst. Code, § 2200 et. seq.) For ease of reference, we refer to the agency as DJJ in this opinion. Undesignated statutory references are to the Welfare and Institutions Code.

On June 27, 2016, appellant was detained in relation to an incident occurring on that date. On June 29, 2016, the Tulare County District Attorney filed a first amended section 602 petition, adding one count of misdemeanor possession of a weapon (folding knife) on school grounds (Pen. Code, § 626.10, subd. (a); count 3), two counts of resisting, obstructing or delaying a peace officer (*id*., § 148, subd. (a)(1); counts 4, 5), and one count of public intoxication (*id*., § 647, subd. (f); count 6).

On July 1, 2016, appellant was placed on home supervision. On August 19, 2016, he was placed on electronic monitoring. On September 2, 2016, informal probation was terminated. On October 14, 2016, the court determined appellant had violated a court order and ordered appellant detained. On October 21, 2016, appellant was placed on electronic monitoring.

On October 29, 2016, appellant was detained in relation to an incident occurring on that date. On October 31, 2016, the Tulare County District Attorney filed a second amended section 602 petition, adding an additional count of resisting, obstructing or delaying a peace officer (Pen. Code, § 148, subd. (a)(1); count 7) and an additional count of public intoxication (*id*., § 647, subd. (f); count 8).

On November 1, 2016, count 5 was stricken, and appellant admitted the remaining counts. At the disposition hearing on November 17, 2016, appellant was adjudged a ward of the juvenile court and ordered home on electronic monitoring.

On November 30, 2016, appellant was detained. On December 2, 2016, the probation department filed a section 777 notice of violation of probation, alleging that appellant had been out of compliance with the terms of probation on multiple occasions. At some point soon thereafter, appellant was placed on home supervision. On July 27, 2017, appellant was again detained. On August 4, 2017, he was released on electronic monitoring.

On October 4, 2017, the Tulare County District Attorney filed a section 602 petition alleging appellant committed a single count of shoplifting (Pen. Code, § 459.5,

3.

subd. (a)) on or about July 27, 2017.  Appellant was detained on October 6, 2017.  At the jurisdictional hearing on October 17, 2017, appellant admitted the petition and the violation of probation filed December 2, 2016.  The juvenile court sustained the petition.  On November 2, 2017, appellant's case was transferred to Fresno County for disposition.

## II.     Current Petition

### A.     THE PETITION

Appellant was detained on June 29, 2019.  On January 17, 2020, the Tulare County District Attorney filed a section 602 petition alleging that on or about June 29, 2019, appellant committed three counts of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); counts 1-3).  As to count 1, the petition alleged a gang allegation (*id*., § 186.22, subd. (b)(1)(C)) and a great bodily injury allegation (*id*., § 12022.7, subd. (a)).  As to counts 2 and 3, the petition alleged a gang allegation (*id*., § 186.22, subd. (b)(1)(A)).

### B.     THE JURISDICTIONAL HEARING

A contested jurisdictional hearing commenced on April 15, 2021.

#### i.     Testimony

On June 29, 2019, Richard B.[2] went to a convenience store with his girlfriend, her mother, and her nephew Xavier.  Richard went into the store while the others waited in the vehicle.  When Richard exited the store, he encountered a group that included appellant.  Appellant yelled out a gang reference.  Appellant attempted to engage Richard in a confrontation, but Richard explained he was not looking for trouble and was trying to get out of there.

Richard went to the driver's side of the car as the group converged on the passenger side, where Xavier was seated.  Appellant punched Xavier, causing Xavier to

---

[2]  Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials.  No disrespect is intended.

lose consciousness and fall to the ground. Appellant and his companions kicked and punched Xavier as he lay on the ground. A bystander, Anthony F., pulled appellant off of Xavier. Appellant kicked Anthony hard in the chest, leaving a footprint. Two of appellant's companions continued to kick Xavier, who appeared to suffer a seizure. Richard testified that he engaged appellant, and they both swung at each other. Anthony testified that someone other than appellant swung at Richard. Video surveillance showed appellant's codefendant punching Richard in the head, while appellant and others surrounded Richard. Richard suffered a cut lip and a cut on his forehead. Appellant and his companions fled the scene.

### ii. Conduct of Proceedings

Appellant admitted the gang enhancement to each count. The juvenile court sustained the charges and found the great bodily injury allegation true. The court ordered appellant detained pending final disposition.

### C. THE REPORTS FROM THE PROBATION DEPARTMENT

On May 4, 2021, the probation officer filed a report recommending appellant be committed to the DJJ for "treatment, training, and rehabilitation." The report detailed appellant's lengthy history of law violations, including those detailed above. The report also detailed a 2019 adjudication in another county for felony corporal injury to a spouse or cohabitant (Pen. Code, § 273.5, subd. (a)) and assault by means of force likely to produce great bodily injury (*id*., § 245, subd. (a)(4)), for which he was detained in jail for approximately 90 days. This violation involved appellant "repeatedly slapping, punching, tazing and ultimately strangling his then girlfriend." The probation officer stated it was hoped the available services at DJJ, including "Aggression Interruption Training (ten-week cognitive behavioral intervention to improve social skills and control anger) and Counter Point (thirty-three session cognitive behavioral program with a goal to reduce the risk o[f] re-offending)" would allow appellant "sufficient time to gain the tools he needs to refrain from any further delinquent behavior."

5.

On May 13, 2021, the juvenile court asked the probation department to provide additional information regarding services available through less restrictive placements with the county and the dispositional hearing was continued.

On May 17, 2021, and May 18, 2021, the probation officer filed memoranda addressing the court's request. The probation officer reported that Fresno County offered a 12- to 16-week gang redirection program that included comprehensive services and anger management counseling, and also offered conflict resolution, anger management counseling, drug and alcohol counseling, and financial literacy, as well as job skills and job placement in certain fields. However, the probation officer expressed concern that these services were "ill equipped to adequately address [appellant's] criminogenic needs."

### D.    THE DISPOSITION HEARING

At the May 20, 2021 disposition hearing, the juvenile court noted that it was tasked with determining a disposition that would best provide appellant with rehabilitation. The court noted appellant had committed serious offenses shortly before attaining 18 years of age and was in need of "strong behavioral counseling." The court found it significant that appellant had been detained in jail for approximately 90 days for what the court characterized as a "serious offense[]," and then committed the instant offenses approximately three months later. The court found the programs at DJJ would benefit appellant's rehabilitation while the programs through Fresno County were not "sufficient . . . to rehabilitate [appellant]." Accordingly, the court committed appellant to the DJJ and set the maximum term of confinement at 27 years, calculated as follows: on count 1, the upper term of four years, plus 10 years for the gang enhancement and three years for the great bodily injury enhancement; and on each of counts 2 and 3, to a term of one year (one-third of the middle term), plus four years (upper term) for the gang enhancement.

6.

## DISCUSSION

### I. Substantial Evidence of Probable Benefit to Appellant

Appellant contends the DJJ commitment must be reversed because the juvenile court's disposition was not supported by substantial evidence the commitment would benefit appellant.

"We review the [juvenile] court's placement decision for an abuse of discretion. [Citation.] We review the court's findings for substantial evidence, and ' "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." ' " (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.) " ' "Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." ' " (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 6.) A DJJ commitment must be supported by substantial evidence of both " 'a probable benefit to the minor' " and the inappropriateness or ineffectiveness of less restrictive alternatives. (*In re Carlos J.*, at p. 6; see *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)

Here, the record contains substantial evidence to support the juvenile court's determination that a DJJ commitment would have a probable benefit to appellant. The court determined, based on appellant's juvenile record and history of violating probation, as well as the seriousness of his most recent offenses, that releasing him on probation was inappropriate. Appellant's juvenile adjudications and probation violation are well-documented in the record. The court's finding in this regard is supported by substantial evidence.

The court also determined that the continuing, serious nature of appellant's offenses required "strong behavioral counseling," particularly with regard to anger management, to assist in his rehabilitation. The record supports the court's finding that a DJJ commitment would have a probable benefit to appellant in this regard, inasmuch as the available services at DJJ included "Aggression Interruption Training (ten-week cognitive behavioral intervention to improve social skills and control anger) and Counter

7.

Point (thirty-three session cognitive behavioral program with a goal to reduce the risk o[f] re-offending)." The juvenile court determined these programs would benefit appellant.

*In re Carlos J.*, *supra*, 22 Cal.App.5th 1, relied on by appellant, is distinguishable. There, the probation officer's report cited the gravity of the underlying offenses, the minor's gang association, and continuing risks to the public in support of its recommendation of a DJJ commitment. (*Id.* at p. 7.) In a supplemental report, the probation officer opined the minor's " 'educational, therapeutic, and emotional issues' " could be best addressed in a secure facility. (*Id.* at pp. 8-9.) However, absent from the record was information regarding the specific treatment the minor might receive at DJJ. (*Id.* at p. 10.) Based on the lack of "*some* specific evidence in the record of the programs at the [DJJ] expected to benefit a minor," the Court of Appeal concluded the record lacked substantial evidence to support the juvenile court's finding of a probable benefit. (*Ibid.*; see *id.* at pp. 11-12.) In contrast, the record in the instant case contains "specific information about relevant programs expected to be of benefit to [appellant]." (*Id.* at p. 12.) The record before us constitutes substantial evidence under the reasoning of *In re Carlos J.* (*Id.* at pp. 12-13.)

The court's findings are supported by substantial evidence. Accordingly, the juvenile court did not abuse its discretion in committing appellant to the DJJ. (*In re Carlos J.*, *supra*, 22 Cal.App.5th at p. 6.)

## II.     Effect of Senate Bill No. 823 and Sections 733.1 and 736.5

Appellant argues the juvenile court abused its discretion in committing appellant to the DJJ in light of Senate Bill No. 823 (2019-2020 Reg. Sess.) (Senate Bill No. 823).[3] We disagree.

---

[3] The People argue this claim is forfeited. Appellant does not argue otherwise. Regardless, we conclude the claim fails on the merits. We therefore do not address appellant's claim of ineffective assistance of counsel.

Senate Bill No. 823 took effect on September 30, 2020 (Stats. 2020, ch. 337, § 53; see *People v. Camba* (1996) 50 Cal.App.4th 857, 865-866), and "substantively rewrote major portions of the juvenile court law" (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 907).  Senate Bill No. 92 (2021-2022 Reg. Sess.) (Senate Bill No. 92) took effect on May 14, 2021, and amended laws implemented by Senate Bill No. 823.  (Stats. 2021, ch. 18, § 23.)

Relevant here, Senate Bill No. 823 announced "the intent of the Legislature to close [DJJ], through shifting responsibility for all youth adjudged a ward of the court, commencing July 1, 2021, to county governments."  (Stats. 2020, ch. 337, § 30; former and current § 736.5, subd. (a).)  It therefore prohibited the juvenile court, with limited exception, from committing a ward to DJJ on or after July 1, 2021.  (Stats. 2020, ch. 337, §§ 29, 30; former and current §§ 733.1, subd. (a); 736.5, subd. (b).)  Senate Bill No. 92 provides that DJJ will close on June 30, 2023.  (Stats. 2021, ch. 18, § 10; § 736.5, subd. (e).)  It also requires the director of DJJ to develop a plan "for the transfer of jurisdiction of youth remaining at [DJJ] who are unable to discharge or otherwise move pursuant to law prior to final closure on June 30, 2023."  (Stats. 2021, ch. 18, § 10; § 736.5, subd. (f).)

The juvenile court committed appellant to the DJJ on May 20, 2021.  On that date, the commitment was not prohibited by either Senate Bill No. 823 or Senate Bill No. 92.  To the contrary, the Legislature did not restrict the court's ability to order a DJJ commitment until July 1, 2021.  (§§ 733.1, subd. (a); 736.5, subds. (a), (b).)  The Legislature also provided clear guidance on the processing of juveniles, such as appellant, committed to DJJ prior to July 1, 2021.  Such wards "shall remain within [DJJ] custody until the ward is discharged, released or otherwise moved pursuant to law, or until final closure of the [DJJ]."  (§ 736.5, subd. (d).)  Thus, appellant may be transferred from the DJJ, if appropriate, under the guidelines the DJJ has been directed to create.  (See § 736.5, subds. (d), (f).)

9.

The court did not abuse its discretion in committing appellant to the DJJ prior to July 1, 2021, and Senate Bill No. 823 does not warrant remand on this basis.

**III.    Effect of Senate Bill No. 823 and Section 731**

Appellant argues the juvenile court erred in failing to apply amendments to section 731 to his maximum term of confinement for the violation in count 1, and for the enhancements to counts 2 and 3. The People concede the applicability of the amendments to the term of confinement for the violation but dispute their applicability to the enhancements. We conclude the amendments to section 731 apply to both the violation and the enhancements. We will modify the maximum term of confinement accordingly.

Prior to Senate Bill No. 823, the juvenile court could not "commit a ward to the [DJJ] for a period that exceeds *the maximum term of imprisonment* that could be imposed upon an adult convicted of the same offense." (§ 731, former subd. (c), italics added, eff. Jan. 1, 2019, to Sept. 29, 2020.) Senate Bill No. 823 amended this provision, effective September 30, 2020, to provide that the juvenile court cannot "commit a ward to the [DJJ] for a period that exceeds *the middle term of imprisonment* that could be imposed upon an adult convicted of the same offense." (Stats. 2020, ch. 337, § 28; § 731, former subd. (c), italics added, eff. Sept. 30, 2020, to June 30, 2021.) This provision was set to expire on July 1, 2021. (Stats. 2020, ch. 337, § 28; § 731, former subd. (d), eff. Sept. 30, 2020, to June 30, 2021.) However, Senate Bill No. 92 replaced the entirety of section 731 with language that became operative on July 1, 2021. (Stats. 2021, ch. 18, § 8; see § 731, subd. (c).) The relevant language implemented by Senate Bill No. 92 is identical to that implemented by Senate Bill No. 823. (Compare § 731, former subd. (c), eff. Sept. 30, 2020, to June 30, 2021, with § 731, subd. (b).)

Here, the juvenile court set the maximum term of confinement at 27 years, calculated as follows: on count 1, the upper term of four years, plus 10 years for the gang enhancement and three years for the great bodily injury enhancement; and on each of

10.

counts 2 and 3, to a term of one year (one-third of the middle term), plus four years (upper term) for the gang enhancement. The parties agree that, at the time of disposition, section 731 required the court to set the term of confinement for each violation at or below the middle term of imprisonment that could be imposed on an adult convicted of the same offense. (§ 731, former subd. (c); see § 731, subd. (b).) Thus, the parties agree the court erred in setting the period of confinement on count 1 at the upper term of four years, rather than the middle term of three years.

The parties disagree as to whether section 731 applies to the term of confinement on the enhancements. Appellant argues his term of confinement on each of the gang enhancements to counts 2 and 3 (§ 186.22, subd. (b)(1)(A)) should have been set at the middle term of three years, rather than the upper term of four years. The People argue section 731 limits the court's discretion as to the term of confinement for an "offense," and therefore, by its express terms, does not apply to enhancements. (§ 731, subd. (b), italics added.)

To resolve this issue, we must look to section 726 and cases interpreting that section. Section 726 previously defined the " 'maximum term of imprisonment' " for purposes of section 731 as the longest adult term for the offense, "plus enhancements which must be proven if pled." (§ 726, former subd. (d)(2); see *In re Jovan B.* (1993) 6 Cal.4th 801, 810.) As noted by the Court of Appeal in *In re George M.* (1993) 14 Cal.App.4th 376, 380, section 726 "direct[ed] only that the court should add the proven enhancements to the upper term for the offense" and did not specify which term the juvenile court should select for an enhancement that involves a sentencing triad. However, the court noted that, with regard to enhancements, the language of section 726 had not been amended since 1989, when the Penal Code was amended to "institute the familiar lower, middle, upper term scheme for certain enhancements." (*In re George M.*, at p. 381; see Stats. 1989, ch. 930, § 5.1.) The court thus concluded the Legislature

"overlooked the effect of the 1989 amendment of the enhancement statutes on the juvenile commitment process." (*In re George M.*, at p. 381.)

However, the court in *In re George M.* noted the Legislature had specified in section 726 "that the outer maximum term of commitment be calculated by using the upper term for the offense or offenses which brought the minor under the jurisdiction of the juvenile court." (*In re George M.*, *supra*, 14 Cal.App.4th at p. 381.) The court then concluded, "[W]e think it logical that the method for selecting the term for the underlying offense should apply in selecting the term for an enhancement. The sentiment expressed in section 726 leads us to believe the Legislature intended the term of confinement to be maximized, not minimized, when a range of terms is available." (*Ibid.*) Thus, the appellate court concluded the juvenile court had properly selected the upper term as the maximum term of confinement on the applicable enhancement. (*Id.* at p. 382.)

Section 726 has been amended to conform with section 731 and no longer permits a juvenile court to use the longest adult term for an offense as the basis for the maximum term of confinement. (§ 726, subd. (d)(2).) Rather, section 726 defines the " 'maximum term of imprisonment' " for purposes of sections 726 and 731 as "*the middle* of the three time periods set forth in paragraph (3) of subdivision (a) of section 1170 of the Penal Code . . . plus enhancements which must be proven if pled." (§ 726, subd. (d)(2), italics added.) Nonetheless, the logic of *In re George M.* remains sound. The Legislature has continued to overlook the effect of enhancement sentencing triads on the juvenile commitment process. (See *In re George M.*, *supra*, 14 Cal.App.4th at p. 381.) However, the "sentiment expressed" (*ibid.*) by the Legislature in both section 731 and section 726 is that the term of confinement for a juvenile should not exceed the middle term sentence applicable to an adult offender. Moreover, the Legislature is presumed to know existing law when it enacts a new statute, including the existing state of the common law. (*In re W.B.* (2012) 55 Cal.4th 30, 57.) We therefore presume the Legislature was aware of the holding of *In re George M.*, which extends the process for determining the maximum

term of confinement for an offense to the determination of the maximum term of confinement for an enhancement. (*In re George M.*, at p. 381.) Accordingly, as in *In re George M.*, we conclude the method for selecting the term for the underlying offense should apply in selecting the term for an enhancement. (*Ibid.*) The term of confinement for an enhancement may be set no higher than the middle term, when a range of terms is available. (Cf. *ibid.*)

Based on the foregoing, the juvenile court erred in setting the maximum term of confinement on count 1, and on the gang enhancements to counts 2 and 3, at the maximum adult term for the same offense and enhancements. Remand is not required to correct the error because the juvenile court imposed the longest possible maximum term of confinement. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15 [remand is not required for resentencing where the trial court imposes the maximum possible sentence].) Accordingly, we will reduce appellant's maximum term of confinement in the DJJ to 24 years, comprised as follows: on count 1, the middle term of three years, plus 10 years for the gang enhancement and three years for the great bodily injury enhancement; and on each of counts 2 and 3, to a term of one year (one-third of the middle term), plus three years (middle term) for each gang enhancement.

## IV.     Custody Credits

The parties disagree as to whether appellant is entitled to custody credits for time spent on electronic monitoring.

In *In re Eric J.* (1979) 25 Cal.3d 522, our Supreme Court held that a minor is entitled to credit for any time spent in " 'physical confinement' " based on the legislative intent behind the phrase " 'maximum term of imprisonment which could be imposed upon an adult,' " as found in former section 726. (*In re Eric J.*, at p. 536; accord, *In re Randy J.* (1994) 22 Cal.App.4th 1497, 1503.) Physical confinement is defined in section 726 as "placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the [DJJ]." (*Id.*, subd. (d)(5).)

13.

Courts have determined that this definition excludes "time not spent in a secure facility." (*In re Randy J.*, at p. 1505.) On this basis, the court held in *In re Lorenzo L.* (2008) 163 Cal.App.4th 1076, 1080, that time spent on electronic monitoring does not qualify as time spent in physical confinement, and thus does not qualify for custody credits. *In re Lorenzo L.* resolves appellant's argument. He is not entitled to custody credits for time spent on electronic monitoring because his electronic monitoring does not constitute physical confinement. Appellant acknowledges that this is the current state of the law, and such result is dictated by the plain language of the statute.

Nonetheless, appellant urges us to extend the holdings in *People v. Raygoza* (2016) 2 Cal.App.5th 593 and *People v. Yanez* (2019) 42 Cal.App.5th 91, to achieve a different result. The defendant in *Raygoza* was an adult to whom the provisions of Penal Code section 2900.5 applied. (*People v. Raygoza*, at pp. 598-599.) Penal Code section 2900.5 expressly provides for custody credits for time spent on home detention, and thus encompasses time spent in certain electronic monitoring programs. (Pen. Code, § 2900.5, subd. (a); *Raygoza*, at p. 602.) However, our Supreme Court has declined to hold that juveniles are entitled to custody credit through direct application of Penal Code section 2900.5, instead relying on Welfare and Institutions Code section 726. (*In re Eric J.*, *supra*, 25 Cal.3d at p. 536; accord, *In re Randy J.*, *supra*, 22 Cal.App.4th at pp. 1503-1504; *In re Michael W.* (1980) 102 Cal.App.3d 946, 953-954.) Thus, *Raygoza* does not alter our analysis.

*Yanez* involved an adult offender who sought conduct credit for time spent on electronic monitoring on home detention prior to sentencing. (*People v. Yanez*, *supra*, 42 Cal.App.5th at p. 93.) The trial court granted the defendant custody credit, but not conduct credit, for that time. (*Id.* at p. 94.) The Court of Appeal noted that postjudgment home detainees are entitled to conduct credit under Penal Code section 4019, but no statute provides a similar guarantee for prejudgment home detainees. (*Yanez*, at pp. 94, 96.) The appellate court held that denying conduct credit to prejudgment detainees for

14.

time spent on electronic monitoring, but allowing conduct credit for postjudgment detainees held under the same conditions, violates equal protection. (*Id.* at p. 93.)

Here, appellant was not released to electronic monitoring pursuant to section 4019, or either of the statutes governing electronic monitoring on home detention for adult felony offenders. (See Pen. Code, §§ 1203.016, 1203.018.) He does not attempt to explain how he is similarly situated to adult offenders seeking conduct credit for time spent on electronic monitoring. Nor does he explain how he might be similarly situated to adult offenders seeking custody credit under Penal Code section 2900.5, other than to assert that the conditions of such electronic monitoring are substantially similar. Our Supreme Court has held generally that "[a]dults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the [DJJ] are not 'similarly situated.' " (*In re Eric J.*, *supra*, 25 Cal.3d at p. 530.) Accordingly, appellant's equal protection argument, to the extent he raises one, fails.

We conclude appellant is not entitled to custody credit for time spent on electronic monitoring.

## **DISPOSITION**

The juvenile's court's dispositional order is modified to reflect a maximum term of confinement of 24 years, and the judgment is affirmed as modified. The juvenile court is directed to prepare an amended disposition order consistent with our modification and forward the amended order to the appropriate authorities.