Filed 4/24/13  In re C.T. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.T., A Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.T.,<br><br>        Defendant and Appellant. | B242029<br>(Los Angeles County<br>Super. Ct. No. JJ19703) |

APPEAL from an order of the Superior Court of Los Angeles County, Catherine J. Pratt, Commissioner.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

In the underlying proceeding, the juvenile court sustained a petition charging appellant C.T. with assault with a deadly weapon. Appellant's court-appointed counsel has filed an opening brief raising no issues. Following our independent examination of the entire record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), we conclude that no arguable issues exist, and affirm.

## RELEVANT PROCEDURAL BACKGROUND

On May 22, 2012, a petition was filed under Welfare and Institutions Code section 602, charging appellant, a minor born in 1995, with assault with a deadly weapon on Ricardo Lopez (Pen. Code, § 245, subd. (a)(1)). Accompanying the charge was an allegation that appellant inflicted great bodily injury on Lopez (Pen. Code, § 12022.7, subd. (a)). Following the presentation of evidence at the adjudication hearing, the juvenile court sustained the petition's allegations regarding the offense charged, found the special allegation to be true, and determined the offense to be a felony. The juvenile court declared appellant to be a ward of the court and ordered him placed in his home on probation. This appeal followed.

## FACTS

A. *Prosecution Evidence*

The prosecution's key witnesses were Daniel T. and his uncle, Ricardo Lopez. Daniel testified that in May 2012, he lived close to appellant, who often gave him "dirty looks" as he went to school. At approximately 9:30 p.m. on May 18, 2012, Daniel was on his bicycle, going to visit Lopez. As Daniel neared Lopez's house, he passed appellant, who said, "Fuck you. I'm going to take your bike." Daniel stopped and used his cell phone to tell Lopez that appellant was

2

"punking [him]" and "talking shit to [him]." Daniel asked Lopez to try to persuade appellant to "stop telling [him] stuff." Lopez arranged to meet Daniel near Lopez's house.

Daniel further testified that Lopez arrived and went to talk to appellant. Daniel, who stood some distance away, heard Lopez ask why appellant was "messing with [his] nephew." In response, appellant moved close to Lopez and said, "Yes, I'm messing with him." Appellant then pushed Lopez and punched his face and chest. According to Daniel, appellant appeared to swing at Lopez with the side of his fist, leading with the thumb, but he saw no weapon in appellant's hand. After Lopez swung once in response to appellant's punches, Daniel said to Lopez, "Let's go. Let's just go home." As they left, Daniel saw blood dripping from Lopez's chin. Soon afterward, Daniel accompanied Lopez to a hospital.

Lopez testified as follows: After Daniel told him by cell phone that appellant was bothering him, he met Daniel on the street. Near Daniel was a female cousin of appellant, who said, "[W]ho the fuck are you? You can't do shit." Lopez walked over to appellant, who was standing near his own house. When Lopez asked appellant why he was "bugging" Daniel, appellant replied, "Oh, what the fuck are you going to do?" He then pushed Lopez and punched his face. Although Lopez saw no weapon in appellant's hands, the punch created a laceration between two and two-and-one-half inches in length on Lopez's chin. Appellant also punched Lopez's chest and shoulder, causing two one-inch lacerations. Lopez threw one punch in self-defense, but he felt "shocked," his chin hurt, and his injuries made him feel weak. When Daniel said, "Let's go," Lopez agreed. Shortly afterward, Lopez went to a hospital, where his lacerations were stitched.

3

South Gate Police Department Officer Christopher Vajravukka testified that he responded to the incident. After Vajravukka advised appellant of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), appellant agreed to speak with him.[1] According to Vajravukka, appellant said that when Lopez confronted him, he removed a knife from his pocket, unfolded it, and held it in his fist while he punched Lopez. Vajravukka further testified that another officer recovered the knife, which had a two- to three-inch blade.

B. *Defense Evidence*

Ana Mejia, appellant's aunt, testified that on May 18, 2012, she was inside her house when she heard her daughter and a neighbor screaming outside. Upon leaving the house, Mejia saw appellant and Lopez grappling with each other. Lopez then threw a punch at appellant, who punched back in self-defense. When Mejia yelled at the combatants to halt, they stopped fighting, and appellant entered Mejia's house. As Lopez left the area with Daniel, Lopez told Mejia's daughter that he "was going to send a girlfriend to beat her up and shoot her."

---

[1] We note that when Vajravukka arrived at the scene, he initially interviewed appellant in his house without advising him of his *Miranda* rights. According to Vajravukka, appellant's mother permitted him to enter the house to talk to appellant. Vajravukka further testified that appellant was not then detained, and that his freedom was not restricted in any way. In view of this testimony, the juvenile court found that no violation of appellant's *Miranda* rights occurred during the initial interview. (*In re Eric J.* (1979) 25 Cal.3d 522, 527 [the procedural safeguards in *Miranda* are triggered only by custodial interrogation]; *In re Danny E.* (1981) 121 Cal.App.3d 44, 50 [*Miranda* warnings were not required when police officers interviewed juvenile in his own home, as "no objective indicia of arrest or detention were apparent"].)

## DISCUSSION

After an examination of the record, appellant's court-appointed counsel filed an opening brief raising no issues and requesting this court to review the record independently pursuant to *Wende*. In addition, counsel advised appellant of his right to submit by supplement brief any contentions or argument he wished the court to consider. Appellant has neither presented a brief nor identified any potential issues. Our examination of the entire record establishes that no arguable issues exist. (*Wende*, *supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

5