Filed 3/21/25  In re R.L. CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.L., a Person Coming Under the Juvenile Court Law. | H052325 (Santa Clara County Super. Ct. No. 17JV42311J) |
| THE PEOPLE, Plaintiff and Respondent, v. R.L., Defendant and Appellant. | |

Pursuant to a negotiated agreement, appellant R.L. admitted committing voluntary manslaughter with an enhancement for personally using a firearm.  After a contested dispositional hearing, the juvenile court committed R.L. to a secure youth treatment facility (SYTF or secure facility) and set a nine-year maximum term of confinement under Welfare and Institutions Code[1] section 875, while acknowledging that R.L. could not be held in secure confinement beyond his 25th birthday.  The court further

_____

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

awarded R.L. 1,449 days of precommitment custody credits against the nine-year maximum term of confinement.

On appeal, R.L. contends the juvenile court erred by setting a maximum term of confinement that exceeded his 25th birthday. R.L. further contends that his precommitment credits should have been awarded against his 25th birthday, the purported correct end date for his maximum term of confinement.

For the reasons explained below, we affirm the juvenile court's dispositional order but order an amendment to the minute order for the dispositional hearing.

## I. FACTS AND PROCEDURAL BACKGROUND

On May 29, 2020, 16-year-old R.L. shot two people who were engaged in a fistfight. R.L. unreasonably believed that one of the fighters (a friend) was in imminent danger of being killed and that he (R.L.) had to use deadly force to defend his friend. In doing so, R.L. killed his friend and shot the other fighter in the face.

In June 2020, the Sacramento County District Attorney filed a juvenile wardship petition (§ 602, subd. (a)) alleging that R.L. committed murder (Pen. Code, § 187, subd. (a); count 1) and assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 2). The petition further alleged, as to count 1, that R.L. personally discharged a firearm causing death (Pen. Code, § 12022.53, subd. (d)) and, as to count 2, that R.L. personally used a firearm (Pen. Code, § 12022.5, subd. (a)) and inflicted great bodily injury during the assault (Pen. Code, § 12022.7).

In January 2024, the Sacramento County Juvenile Court denied the district attorney's motion to transfer the matter to the superior court.

2

In February 2024, R.L. admitted committing voluntary manslaughter (Pen. Code, § 192, subd. (a); as reasonably related to the murder allegation in count 1) and a firearm enhancement (Pen. Code, § 12022.5; as amended in count 1). When describing the consequences of R.L.'s admission, the juvenile court advised R.L. that the "maximum exposure" for the offense and enhancement "is 21 years or age 25" and the "maximum time [he] could spend in physical confinement is ten years."[2] In exchange for R.L.'s admission, the court granted the district attorney's motion to dismiss the assault allegation (count 2). The court also transferred the matter to Santa Clara County for disposition based on R.L.'s residency.

Prior to the contested dispositional hearing before the Santa Clara County Juvenile Court, R.L., through counsel, filed a disposition memorandum. R.L. noted his current age (20 years and six months in April 2024) and that he had been in custody since the shooting in May 2020. R.L. further noted that the probation department had recommended he be committed to a secure facility. R.L. asked the juvenile court for "a less restrictive placement than the [SYTF] and/or for the lowest baseline term available."[3]

R.L. acknowledged in his disposition memorandum that "[t]he 'theoretical' maximum term of confinement" for his offense and firearm enhancement is a total of 10 years. He maintained that "the longest maximum term of confinement th[e c]ourt could set is that of [his] 25th

[2] The sentencing triad for voluntary manslaughter is three, six, or 11 years in prison. (Pen. Code, § 193, subd. (a).) The firearm enhancement "shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years." (*Id*., § 12022.5, subd. (a).)
[3] The baseline term for voluntary manslaughter ranges from three to five years. (§ 875, subd. (b); Cal. Rules of Court, rules 5.804(b), 5.806(d).)

3

birthday, or the date of October l3, 2028. Since [he] was arrested on May[]
29, 2020, the longest maximum term of confinement is 3,060 days, or eight
years and 140 days from the date of his arrest." Nevertheless, R.L. contended
that the maximum term of confinement " 'appropriate to achieve
rehabilitation' " (§ 875, subd. (c)(1)) in this case is "five years" from the date of
his offense; that is, "May 28, 2025, when [he] is 22 years and seven months
old."

The prosecutor asked the juvenile court to set a baseline term of five
years and a maximum term of confinement of 10 years. Regarding the
maximum term of confinement, the prosecutor contended: "It is somewhat of
an academic exercise, but it's also important as it relates to should [R.L.] be
stepped down to the ranch or stepped down to probation because there are
provisions of [section] 875 where he can be returned to [SYTF] for the
remainder of his baseline or six months, whichever is longer. So, even if he
has three months left on his baseline, the [c]ourt would be able to place him
back into [SYTF] for six months. That's incredibly important as we look
towards the future and as we look towards [R.L.]'s behavior once he's back
within the community."

On May 16, 2024, the juvenile court adjudged R.L. a ward of the court
and committed him to a secure facility with a baseline term of four years and
two months and a nine-year maximum term of confinement.

The juvenile court explained its selection of the nine-year maximum
term as follows: "I find that the proper maximum term of confinement that
can be imposed pursuant to [s]ection 875[, subdivision] (c)(1)(B) of the
Welfare and Institutions Code is nine years. The case of *In [r]e M.B.* [(2024)]
99 Cal.App.5th 435 specifically permits that kind of lengthy term of
confinement even though as a practical matter there are other limitations in

4

terms of how much time [R.L.] can spend in secure confinement which is limited to 25 years or two years from the date of commitment, whichever occurs later.  [¶]  I've considered the individual facts and circumstances in this case, including the fact that . . . there was not an intent to kill his friend but that the whole set of circumstances that led to this event were very, very dangerous and that is why I'm not adopting either the prosecution's or the defense's suggestion for the maximum term of confinement."

The juvenile court awarded R.L. 1,449 days (three years, 11 months and 19 days) of "credit for time served against that maximum term of confinement as set out in [s]ection 875[, subdivision] (c)(1)(C)."

The minute order for the dispositional hearing does not reflect the nine-year maximum term of confinement pronounced by the juvenile court. Rather, the minute order contains a blank space where the maximum term of confinement should have been inserted in the attached and incorporated findings and orders of the court:  "13.  That the [c]ourt set the maximum term of confinement in the Secure Youth Treatment Facility as _____[blank]____."

R.L. appealed the juvenile court's dispositional order.

## II.  DISCUSSION

A. *Maximum Term of Confinement*

R.L. contends the juvenile court abused its discretion by setting his maximum term of confinement at nine years, notwithstanding the court's acknowledgement that R.L. could not be confined past his 25th birthday. R.L. argues that the maximum term allowed under section 875, subdivision (c) "was the amount of time [he] had between his sentencing hearing and the time he turned 25" (i.e., between May 16, 2024 and October 13, 2028, or four years, four months, and 27 days).  Based on the alleged error, R.L. asks this court to remand "so that the juvenile court may set a proper maximum

5

confinement term" and "that both the disposition minute order and commitment order be corrected by removing any reference to [nine] years and replacing it with a newly determined maximum term of confinement."

The Attorney General responds that the juvenile court properly set R.L.'s maximum term of confinement at nine years while noting the effect of his 25th birthday. The Attorney General contends "the maximum term of confinement under section 875 must be calculated independently of the age limitations on SYTF confinement."

1. Legal Principles

" 'Until recently, the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) was "the state's most restrictive placement for its most severe juvenile offenders . . . ." ' [Citation.] In 2020 and 2021 the Legislature passed a series of bills aimed at 'juvenile justice realignment,' with the purpose 'to ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment' and 'to establish a separate dispositional track for higher-need youth.' " (*In re Jose R.* (2024) 102 Cal.App.5th 839, 845 (*Jose R.*).)

"As part of realignment, the Legislature transferred responsibility for minors who have been adjudged wards of the court, and who would have been committed to DJJ, to county governments." (*Jose R., supra,* 102 Cal.App.5th at p. 845.) The Legislature added section 875, which permits the juvenile court to commit a ward who meets certain criteria to a secure facility. (*Ibid.*)

"After realignment, when a juvenile court commits a minor to SYTF, the court must [] set a baseline period of confinement and a statutory maximum. Section 875, subdivision (b)(1), provides that the court must 'set a baseline term of confinement' that 'shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to

6

prepare the ward for discharge . . . .' The baseline term is subject to potential downward modification (or a ward may be released from SYTF and assigned to a less restrictive program) during progress review hearings that must be held at least once every six months." (*Jose R.*, *supra*, 102 Cal.App.5th at pp. 846–847, fn. omitted.)

"Subdivision (c) of section 875 requires that the court also set a 'maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation.' (§ 875, subd. (c)(1).) Under section 875, subdivision (c)(1), the maximum term of confinement is 'the longest term of confinement in a facility that the ward may serve subject to' three limitations. (*Ibid*.) First, a ward committed to an SYTF is not to be held in secure confinement beyond 23 years of age (or 25 years of age for more serious offenses) or two years from the date of commitment, whichever occurs later. (*Id*., subd. (c)(1)(A).) Second, the maximum term of confinement 'shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses,' with additional directives as to how a court is to proceed if it elects to aggregate the period of confinement on multiple counts or multiple petitions. (*Id*., subd. (c)(1)(B); accord, § 726, subd. (d)(1), (3), (5) [this cap applies when a ward is placed in 'physical confinement,' which includes placement in an SYTF under § 875].) Third, section 875, subdivision (c) specifies that '[p]recommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision.' (*Id*., subd. (c)(1)(C).)"[4] (*In re M.B.*, *supra*, 99 Cal.App.5th at

---

[4] Section 875, subdivision (c) provides in full: "(1) In making its order of commitment, the court shall additionally set a maximum term of

p. 449 (*M.B.*); see also § 607, subd. (c) [the juvenile court retains jurisdiction over a youth adjudicated for a § 707, subdivision (b) offense until the youth reaches age 25, or two years from the date of commitment to SYTF, whichever occurs later, if the youth, at the time of adjudication, would have faced an aggregate sentence of seven years or more in adult court].)

Section 875, subdivision (c)(2) further provides: "For purposes of this section, 'maximum term of confinement' has the same meaning as 'maximum

confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation. The maximum term of confinement shall represent the longest term of confinement in a facility that the ward may serve subject to the following: [¶] (A) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later. [¶] (B) The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses. If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within [s]ection 602, the maximum term of confinement shall be the aggregate term of imprisonment specified in subdivision (a) of [s]ection 1170.1 of the Penal Code, which includes any additional term imposed pursuant to [s]ection 667, 667.5, 667.6, or 12022.1 of the Penal Code, and [s]ection 11370.2 of the Health and Safety Code. [¶] (C) Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."

8

term of imprisonment,' as defined in paragraph (2) of subdivision (d) of [s]ection 726."[5]

"This maximum term of confinement serves as a limit on how long a ward's time in custody may be extended at the conclusion of the baseline term if the court finds 'the ward constitutes a substantial risk of imminent harm to others in the community if released from custody' (§ 875, subd. (e)(3)) and on how long a ward may be recommitted to a SYTF after being placed in a less restrictive program (*id*., subd. (f)(2))." (*Jose R., supra*, 102 Cal.App.5th at p. 847, fn. omitted.)

We generally review dispositional orders for an abuse of discretion. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) We review questions of statutory interpretation de novo. (*In re M.A.* (2022) 83 Cal.App.5th 143, 148.)

" 'In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed "in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " [Citation.] In other words, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may

---

[5] Section 726, subdivision (d)(2) states: "As used in this section . . ., 'maximum term of imprisonment' means the middle of the three time periods set forth in paragraph (3) of subdivision (a) of [s]ection 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of [s]ection 1170 of the Penal Code or to consider time for good behavior or participation pursuant to [s]ections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

be harmonized and retain effectiveness." [Citation.]' " [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences.' " (*People v. Killian* (2024) 100 Cal.App.5th 191, 205.)

  2. <u>Analysis</u>

  We are not persuaded that the juvenile court erred under section 875 when it set R.L.'s maximum term of confinement at nine years.

  As the juvenile court noted at the dispositional hearing, its selection of a nine-year maximum term accords with precedent interpreting section 875. In *M.B.*, the Court of Appeal considered a claim that the juvenile court had abused its discretion in setting a 22-years-to-life maximum term of confinement under section 875, subdivision (c). (*M.B.*, *supra*, 99 Cal.App.5th at p. 460.) The appellate court agreed with the parties that the maximum term imposed by the juvenile court was unauthorized because the minor did not admit that his attempted murder offense was premeditated. (*Ibid.*) Accordingly, the "maximum term permitted by statute was instead 22 years (§ 875, subd. (c)(1)(B).)" (*Ibid.*) The Court of Appeal explained that section 875 "allows a juvenile court to impose a maximum term of confinement in an SYTF that is equal to or less than the middle term of imprisonment that could be imposed on an adult convicted of the same offense. (§ 875, subd. (c)(1).)" (*Id.* at p. 461.) The appellate court noted further: "And, of course, M.B.'s actual time spent in confinement will likely be shorter [than the 22-year statutory maximum], as it is subject to the separate cap in section 875,

10

subdivision (c)(1)(A) prohibiting confinement 'beyond 25 years of age, or two years from the date of commitment, whichever occurs later.' " (*Id*. at p. 461, fn. 21.)

We agree with the *M.B.* court's interpretation of section 875. The juvenile court here had authority to set a maximum term of confinement—based on the "facts and circumstances" and "as deemed appropriate to achieve rehabilitation" (§ 875, subd. (c)(1))—that was equal to or less than the 10-year statutory maximum punishment allowed for R.L.'s voluntary manslaughter offense and firearm enhancement. Although section 875, subdivision (c)(1)(A) separately precludes the county from holding R.L. in secure confinement "beyond 25 years of age," that subdivision does not mention the "maximum term of confinement" itself. By contrast, section 875, subdivision (c)(1)(B) expressly states an upper limit for the "maximum term of confinement." Considering the statutory language and overall statutory scheme, section 875 and related statutes do not limit the top end of the "maximum term of confinement" to the date on which a minor attains age 25. (See *M.B.*, *supra*, 99 Cal.App.5th at pp. 460–461.) We thus conclude the juvenile court made no error when it set R.L.'s maximum term of confinement at nine years.

Nevertheless, the minute order for the dispositional hearing does not accurately reflect the juvenile court's order on the maximum term of confinement. We order the juvenile court to amend its May 16, 2024 dispositional minute order to include the nine-year maximum term in item No. 13 of the findings and orders attached to and incorporated into the minute order.

11

B. *Precommitment Credits*

R.L. claims the juvenile court erroneously applied his precommitment credits "to the theoretical term of confinement of [nine] years calculated in accordance with section 875, subdivision (c)(1)(B) and section 726," rather than his "actual maximum custodial term as required by *In re Ernesto L.*" (2022) 81 Cal.App.5th 31 (*Ernesto L.*). (Boldface & capitalization omitted.) R.L. further contends that the "actual maximum confinement time is the functional equivalent of a DJJ maximum term of confinement such that the application of precommitment credits to the theoretical maximum confinement time violates equal protection." (Boldface & capitalization omitted.)

Having rejected R.L.'s claim that the juvenile court erred by imposing a nine-year maximum term of confinement, we, in turn, reject his argument that the court should have applied his precommitment credits against his 25th birthday to arrive at "an effective maximum term of confinement ending on October 25, 2024." R.L.'s contention that his almost four years of credits must be subtracted from his 25th birthday is contrary to the applicable statute. Section 875, subdivision (c)(1)(C) "unambiguously states that '[p]recommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision.' Where statutory language 'is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " (*Jose R.*, *supra*, 102 Cal.App.5th at p. 848.) "There is no reasonable interpretation of section 875, subdivision (c)(1)(C), other than that precommitment custody credits must be applied to the maximum term set by the court under section 875, subdivision (c)(1)." (*Ibid.*) The juvenile court here applied R.L.'s precommitment custody credits against

the properly set nine-year maximum term of confinement in accordance with the statute's command.

We are not persuaded by R.L.'s reading of *Ernesto L.* or that its holding should be extended to "the interpretation of subdivision (c)(1)(C) of section 875." *Ernesto L.* concerned the application of precommitment credits to a DJJ commitment, not a commitment to a secure facility under section 875. (*Ernesto L.*, *supra*, 81 Cal.App.5th at pp. 37–38.) Notwithstanding the difference in applicable statutes, we agree with the *M.B.* court that "the statutes governing SYTF commitments and the application of precommitment credits in that context already do operate in the way *Ernesto L.* determined the statutes should operate in the DJJ context." (*M.B.*, *supra*, 99 Cal.App.5th at p. 466.)

The *Ernesto L.* court "held that, when a ward is committed to the DJJ, the ward's precommitment credits must be applied against the term *Ernesto L.* called the 'maximum custodial term' set by the juvenile court under section 731, subdivision (b) ' "based upon the facts and circumstances," ' rather than against the term *Ernesto L.* called the 'maximum exposure term' set by section 726, subdivision (d)(1)." (*M.B.*, *supra*, 99 Cal.App.5th at p. 465, citing *Ernesto L.*, *supra*, 81 Cal.App.5th. at p. 34)

"The *Ernesto L.* court explained the two terms at issue in that case. First, in general, 'if a minor is removed from a parent's physical custody after being adjudged a ward of the court, the dispositional order must "specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment" that could be imposed on an adult convicted of the same offense. [(§ 726, subd. (d)(1).)]' [Citation.] But for DJJ commitments in particular, 'the juvenile court has discretion, "based upon the facts and circumstances," to set an even lower maximum term of physical

13

confinement.  (§ 731, subd. (b).)'  [Citation.]  As noted, *Ernesto L.* held that, when a ward is committed to the DJJ, a juvenile court must apply precommitment credits against 'the actual maximum term set under section 731' (the maximum custodial term), rather than against 'the theoretical maximum term under section 726' (the maximum exposure term)."  (*M.B.*, *supra*, 99 Cal.App.5th at pp. 465–466.)

"In reaching this conclusion, *Ernesto L.* interpreted section 731's requirement that a minor 'not be confined' in excess of the maximum custodial term set by the court to refer to both precommitment and postcommitment physical confinement.  [Citations.]  The *Ernesto L.* court concluded this result followed from the reasoning of the California Supreme Court in *In re Eric J.* (1979) 25 Cal.3d 522, which had held similar language in former section 726 referred to both precommitment and postcommitment physical confinement."  (*M.B.*, *supra*, 99 Cal.App.5th at p. 466.)

The application of precommitment credits for a SYTF placement against the maximum term of confinement—which a court sets "based upon the facts and circumstances of the matter . . . and as deemed appropriate to achieve rehabilitation" (§ 875, subd. (c)(1)—is analogous to the way *Ernesto L.* held credits should be applied in the DJJ context.  (*M.B.*, *supra*, 99 Cal.App.5th at pp. 466–467.)  Hence, "there is no disparate treatment [between a SYTF placement and a DJJ placement] that could give rise to an equal protection problem."  (*Id.* at p. 467.)

Furthermore, assuming arguendo that the application of precommitment credits under section 875, subdivision (c)(1)(C) results in disparate, less favorable treatment of youths committed to a secure facility as compared to DJJ, we discern no equal protection violation.  The federal and California Constitutions both guarantee individuals the equal protection of

14

the laws.  (*People v. Hardin* (2024) 15 Cal.5th 834, 847 & fn. 2 (*Hardin*).)
" '[T]he requirement of equal protection ensures that the government does not
treat a group of people unequally without some justification.' [Citation.]
'Equal protection does not require that all persons be dealt with identically,
but it does require that a distinction made have some relevance to the
purpose for which the classification is made.' " (*People v. Williams* (2024) 17
Cal.5th 99, 122 (*Williams*).)

"In resolving an equal protection challenge, we apply different levels of
scrutiny depending on the type of classification involved.  [Citation.]  ' "At a
minimum, a statutory classification must be rationally related to a legitimate
governmental purpose." ' [Citation.]  If the unequal treatment involves a
suspect class or fundamental right, then we apply strict scrutiny and ' " 'the
state bears the burden of establishing not only that it has a compelling
interest which justifies the law but that the distinctions drawn by the law are
necessary to further its purpose.' [Citation.]" ' [Citation.]  'The general rule
is that legislation is presumed to be valid and will be sustained if the
classification drawn by the statute is rationally related to a legitimate state
interest.' "[6] (*Williams, supra,* 17 Cal.5th at p. 122, italics omitted.)

"Rational basis review 'sets a high bar' for litigants challenging
legislative enactments." (*Hardin, supra,* 15 Cal.5th at p. 852.)  "Under this
deferential standard, we presume that a given statutory classification is valid

----

[6] R.L. makes no argument that the alleged unequal treatment involves
a suspect class or fundamental right.  Rather, he argues "there is no rational
basis justifying the disparate treatment of minors committed to [SYTF] as
compared to those committed to DJJ to whom *Ernesto L.* applied."  We thus
review his equal protection claim under the rational basis standard.  (See
*Jose R., supra,* 102 Cal.App.5th at p. 848; see also *People v. Gerson* (2022) 80
Cal.App.5th 1067, 1090 [applying rational basis review to an equal protection
claim regarding entitlement to custody credit].)

15

'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' " (*Ibid.*)

The Legislature could rationally have concluded that after realignment, the application of precommitment credits "against the maximum term of confinement" (§ 875, subd. (c)(1)(C)) without regard to the youth's 25th birthday promotes the juvenile court's ability achieve its goals of rehabilitation and community safety (see §§ 202, subd. (b), 875, subd. (a)(3)(C)) by keeping the youth under its jurisdiction and subject to secure confinement for as long as possible, up to age 25. Put differently, contemplating a case like this one involving a serious offense and a long statutory term of imprisonment that exceeds the youth's 25th birthday, the Legislature could have acted on a legitimate state interest to provide the youth credit for time spent in custody while also allowing the juvenile court to securely confine the youth up to age 25 "as deemed appropriate to achieve rehabilitation." (§ 875, subd. (c)(1).)

For these reasons, we reject R.L.'s claim that the application of precommitment credits against his nine-year maximum term of confinement violated his right to equal protection. (See *Jose R.*, *supra*, 102 Cal.App.5th at p. 850 ["the Legislature is entitled to make changes to sentencing statutes that create disparities between how individuals are sentenced before and after the amendments"].)

## III. DISPOSITION

The juvenile court's May 16, 2024 dispositional order is affirmed. We direct the juvenile court to amend its May 16, 2024 minute order to include the nine-year maximum term of confinement in item No. 13 of the findings and orders attached to and incorporated into the minute order.

16

_____
Danner, Acting P. J.

WE CONCUR:

_____
Lie, J.

_____
Bromberg, J.

**H052325**
*People v. R.L.*